UNITED STATES DISTRICT COURT FOR THE _NORTHERN_ DISTRICT OF FLORIDA
_TALLAHASSEE_ DIVISION

## CIVIL RIGHTS COMPLAINT FORM
### TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983

_Thomas R. Hayes_,
Inmate # _053583_.
(Enter full name of Plaintiff)

vs.

CASE NO: _4:19cv99 (MW)-CAS_
(To be assigned by Clerk)

_MARK S. INCH, SECRETARY_,
_Florida Department of Corrections_,
_Julie L. Jones, Former Secretary_
_Florida Department of Corrections_.

_John/Jane Doe, #1_
_Unknown - Corizon_
_John/Jane Doe, #2_
_Unknown - Florida Department Corrections_

_Victoral Love_,
_V.P. of Operations - Centurion of Florida_

(Enter name and title of each Defendant.
If additional space is required, use the
blank area below and directly to the right.)

_Daniel Cherry_,
_Former Medical Director - Centurion of Fl._

_Woodrow A. Myers_,
_C.E.O. - Corizon Health Services_

_Elliot Perez-Hugo_,
_Former Chief of Health Office, on site - U.C.I_

### ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

_Rodolphe La Fontant_,
_Doctor - Corizon_

_E.L. Toledo_,
_Doctor - Centurion of Florida_

FILED USDC FLND TL
FEB 19 '19 PM 12:26

FF-4

I.      **PLAINTIFF:**

State your <u>full name</u>, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff: _Thomas Ray Hayes_
Inmate Number _053503_
Prison or Jail: _Union Correctional Inst._
Mailing address: _P.O. Box 1000_
_Raiford, Fl 32083_

II.     **DEFENDANT(S):**

State the <u>name</u> of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address.   Do the same for <u>every</u> Defendant:

(1)     Defendant's name: _Mark S. Inch_
        Official position: _Secretary_
        Employed at: _Florida Department of Corrections_
        Mailing address: _501 Calhoun Street_
        _Tallahassee, Fl 32399-2500_

(2)     Defendant's name: _Julie L. Jones_
        Official position: _Former Secretary_
        Employed at: _____
        Mailing address: _501 Calhoun Street_
        _Tallahassee, Fl. 32399-2500_

(3)     Defendant's name: _Woodrow A. Myers, Jr._
        Official position: _Chief Operating Officer_
        Employed at: _Corizon - Health Services_
        Mailing address: _103 Powell Court_
        _Brentwood, TN 37027_

<u>**ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS**</u>

II. Defendant(s):

(4) Defendant's Name:    Rodolphe LaFontant
       Official position:    Doctor
       Employed at:    Corizon
       Mailing Address:    The Toomey Law Firm,
          1625 Henry St., Suite 203
          Fort Myers, Florida 33901

(5) Defendant's Name:    John / Jane Doe #1
       Official position:    Unknown
       Employed at:    Corizon
       Mailing Address:    The Toomey Law Firm,
          1625 Henry St., Suite 203
          Fort Myers, Florida 33901

(6) Defendant's Name:    John / Jane Doe #2
       Official position:    Unknown
       Employed at:    Florida Department of Corrections
       Mailing Address:    501 Calhoun Street
          Tallahassee, Florida 32399-2500

(7) Defendant's Name:    Victoral Love
       Official position:    Vice-President of Operation, Centurion of Florida
       Employed at:    Centurion of Florida
       Mailing Address:    1203 Governor's Square Blvd.
          Tallahassee, Florida 32301

(8) Defendant's Name:    Daniel Cherry
       Official position:    Centurion's Former Medical Director
       Employed at:    Centurion of Florida
       Mailing Address:    1203 Governor's Square Blvd.
          Tallahassee, Florida 32301

(9) Defendant's Name:    Elliot Perez-Lugo
    Official position:      Former Chief Health Officer on site—U.C.I.
    Employed at:          Centurion of Florida
    Mailing Address:      Paddock Park Prof. Bldg.
                       3200 S.W. 34th Ave., Suite 701
                       Ocala, Florida 34474

(10) Defendant's Name:   E. L. Toledo
    Official position:      Doctor
    Employed at:          Centurion of Florida
    Mailing Address:      Paddock Park Prof. Bldg.
                       3200 S.W. 34th Ave., Suite 701
                       Ocala, Florida 34474

2B

NOTE: THE COURT WILL NOT REVIEW THE MERITS OF THE COMPLAINT UNLESS THE FOLLOWING QUESTIONS HAVE BEEN ANSWERED REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES AND ANY PRIOR LAW SUITS THAT HAVE BEEN FILED.

III.   **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center.  42 U.S.C. § 1997e(a).  Plaintiff must submit copies of all grievances, appeals, and responses with this complaint to verify exhaustion.  Failure to demonstrate exhaustion may be grounds for dismissal.

A.   **DOES YOUR COMPLAINT CONCERN EVENTS OCCURRING WITHIN THE FLORIDA DEPARTMENT OF CORRECTIONS?**

Yes(X)                    No(  )

[If your answer is NO, proceed to Question B.  If your answer is YES, answer all of the following questions in this subsection.]

1.   **Informal Grievance**

a.   Did you submit an informal grievance?

Yes(  )                    No(X)

❖ If so, you must attach a copy of the grievance and response; exhibit _____.

b.   If not, why? _filed Formal Medical grievance_

2.   **Formal Grievance**

a.   Did you submit a formal grievance?

Yes(X)                    No(  )

❖ If so, you must attach a copy of the grievance and response; exhibit _A-A1_

b.   If not, why? _____

3.   **Appeal to the Office of the Secretary**

a.   Did you submit an appeal to the Office of the Secretary?

Yes(X)                    No(  )

❖ If so, you must attach a copy of the appeal and response; exhibit _A2-A3_

b.   If not, why? _____

3

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff has exhausted all available administrative remedies pursuant to 42 U.S.C. §1997(e), regarding denial / deferral of treatment, because of custom of practice employed by the FDOC and both Health Care Providers, Corizon Health Services and Centurion of Florida.

Plaintiff has also exhausted all available administrative remedies regarding adequate / proper Post-care for Plaintiff and other HCV inmate identified as Priority Level-One and Two is, who had been treated. Both sets of grievances are attached to this complaint.

Plaintiff took additional steps, in an attempt to possibly resolve these issues by contacting parties of both Corizon and Centurion trying to avoid litigation with them. Centurion would not respond and Corizon's Attorney wanted an additional four-months to get additional medical records beyond what Plaintiff provided and no-doubt, additional time to review them. Thereby, putting litigation off at least eight months since initial contact. This time frame was unacceptable to Plaintiff and Mr. Toomey can obtain them through discovery. (See also attached letters in date order).

**4.**     **Disciplinary Actions**

a.     Did you have a disciplinary hearing concerning this matter?

Yes(  )                    No( X )

❖ If so, you must attach a copy of the disciplinary report and disciplinary hearing team's findings and decision to this form; exhibit _N/A_ .

b.     Did you lose gaintime as a result of the disciplinary hearing?

Yes(  )                    No( X )

c.     Has the gaintime since been restored?

Yes(  )                    No( X )

**B.     DOES YOUR COMPLAINT CONCERN EVENTS OCCURRING WITHIN A COUNTY JAIL OR DETENTION CENTER?**

Yes                    No( X )

[If your answer is NO, proceed to Section IV of the complaint form.
If your answer is YES, answer the following questions.]

1.     Is there a grievance procedure at your institution or jail?

Yes(  )                    No( X )

[If your answer is NO, proceed to Section IV of the complaint form.  If your answer is YES, answer all of the following questions in this subsection.]

2.     Did you submit a grievance concerning the facts relating to your complaint?

Yes(  )                    No( X )

3.     If your answer is YES:

a.  What steps did you take? _____ _N/A_ _____

b.  What were the results? _____ _N/A_ _____

❖ If so, you must attach a copy of the grievance and response; exhibit _____.

4.     If your answer is NO, explain why not: _____ _N/A_ _____

_____ _N/A_ _____

4

NOTE:  FAILURE TO DISCLOSE ALL PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL
OF THIS CASE.  IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED,
THAT FACT MUST BE DISCLOSED AS WELL.

IV.    **PREVIOUS LAWSUITS**

A.    Have you initiated other actions in **state court** dealing with the same or similar
facts/issues involved in this action?
Yes(  )                         No(X)

   1. Parties to previous action:
       a.  Plaintiff(s): _____ N/A _____
       b.  Defendant(s): _____ N/A _____
   2. Name of judge: _____ N/A _____   Case #: _ N/A _
   3. County and judicial circuit: _____ N/A _____
   4. Name of judge: _____ N/A _____
   5. Approximate filing date: _____ N/A _____
   6. If not still pending, date of dismissal: ___ N/A ___
   7. Reason for dismissal: _____ N/A _____
   8. Facts and claims of case: _____ N/A _____

   **(Attach additional pages as necessary to list state court cases.)**

B.    Have you initiated other actions in **federal court** dealing with the same or similar
facts/issues involved in this action?

      Yes(  )                     No(X)

   1. Parties to previous action:
       a.  Plaintiff(s): _____ N/A _____
       b.  Defendant(s): _____ N/A _____
   2. District and judicial division: _____ N/A _____
   3. Name of judge: _____ N/A _____   Case #: _ N/A _
   4. Approximate filing date: _____ N/A _____
   5. If not still pending, date of dismissal: ___ N/A ___
   6. Reason for dismissal: _____ N/A _____
   7. Facts and claims of case: _____ N/A _____

**(Attach additional pages as necessary to list other federal court cases.)**

5

C.   Have you initiated other actions (*besides those listed above in Questions (A) and (B)*) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes(✗)                          No(  )

If YES, describe each action in the space provided below.  If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

    1. Parties to previous action:
      a.   Plaintiff(s): _____*Thomas R. Hayes*_____
      b.   Defendant(s): _____*Secretary - FDC*_____
    2. District and judicial division: ___*Bradford County - Circuit*___
    3. Name of judge: ___*GREEN*___       Case #: __*?*__
    4. Approximate filing date: ___*1980*___
    5. If not still pending, date of dismissal: ___*1981*___
    6. Reason for dismissal: _*was Transferred - became Moot issue.*_
    7. Facts and claims of case: ___*living conditions*___
    _____

**(Attach additional pages as necessary to list cases.)**

D.   Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service?  If so, identify each and every case so dismissed:

Yes(  )                          No(✗)

    1. Parties to previous action:
      a.   Plaintiff(s): _____*N/A*_____
      b.   Defendant(s): _____*N/A*_____
    2. District and judicial division: _____*N/A*_____
    3. Name of judge: ___*N/A*___   Case Docket # __*N/A*__
    4. Approximate filing date: ___*N/A*___  Dismissal date: __*N/A*__
    5. Reason for dismissal: _____*N/A*_____

**(Attach additional pages as necessary to list cases.)**

6

## V. **STATEMENT OF FACTS:**

1). Plaintiff is currently incarcerated at Union Correctional Institution and at all times relevant hereto is under the care, custody, and control of the Florida Department of Corrections, herein after referred to as, (FDOC). Plaintiff is currently (63) sixty-three years of age and has been continually incarcerated in the FDOC since 1976.

2). Plaintiff was originally diagnosed with Hepatitis C, (herein after referred to as, (HCV) in or around October of 2001, by an FDOC doctor, Dr. Astacio. After our conversation with regards to Plaintiff's past and the events that led to his diagnosis of HCV, that Plaintiff had been chronic for ten to twenty years previously. He advised Plaintiff that he would be placed on a "Chronic Illness Clinic" (herein after referred to as (C.I.C.) for review and monitor Plaintiff's (HCV) every (6) six months.

3). In December of 2001, Dr. Astacio had Plaintiff sign an authorization both specialty evaluation and liver biopsy. However, Plaintiff was subsequently transferred on 4-30-2002 and never received either the evaluation or biopsy.

4). The monitoring process consisted of taking a blood sample(s). Once the results were back, Plaintiff would be called-out for appointment with a doctor at the Medical Department. The C.I.C. reviews were usually the same and only take ten

to fifteen minutes. The majority of the time the response was, "it all looks good see you in six months.

5). From April 30, 2002 through June of 2013, Plaintiff had been transferred to three different institutions. In this time span, the C.I.C.'s were handled pretty much the same.

6).Plaintiff arrived at his current institution, Union Correctional Institution (herein after referred to U.C.I.) on June 2013. It was around this point and time that Plaintiff's liver condition started to decline noticeably. Plaintiff had started experiencing frequent sharp pains, coupled with an almost constant dull ache in the live area. Although these signs occurred once in awhile in the past, but never to the frequency or severity.

7). On 9-5-2013 Dr. Aviles, a (Corizon employee) had submitted a consultation request for Specialty Evaluation. Dr. Aviles noted that previously requested biopsy had never been performed. That coupled with Plaintiff's current exhibited symptoms. However, the consultation was denied by U.M. (Utilization Management) signed and stamped by Dr. R. LaFontant, also a (Corizon employee).

8). Defendant LaFontant to the best of Plaintiff's knowledge and belief was not a specialist himself. He was aware that Plaintiff had never previously been evaluated

by a Specialist since the original diagnosis in 2001.

9). In a previous deposition in a Federal Civil Case in 2015 in Alabama, Dr. Hood, a Corizon Doctor had stated, "Corizon is a full risk Health Care Provider. Corizon assesses the inmate population and creates a budget. Then, for a pre-agreed contract price, Corizon employs all medical staff in the facility and covers the cost of medication, off-site referrals and hospitalization."

10). Defendant Myers, C.E.O. of Corizon, has previously and presently operated and provides health care services for numerous prison systems across this country. He is well aware of both the National Standard of care required and the associated cost required to provide said care for HCV Inmates.

11). Defendant Myers knew through the large contract signed with FDC and their prior assessment of those prospective medical files, was aware of the significant number of diagnosed (HCV) inmates on C.I.C. Reviews, who would require proper evaluation and potential treatment by the recognized standard of care under Corizon's watch.

12). Defendant Myers knew due to the lack of funds not being expended for proper evaluation and treatment on this significant number of FDC (HVC) inmates under the contract; was a result of Corizon's custom and practice of no-specialty

7c

evaluations and no-treatment policy employed on 99.99% of all (HCV) inmates under their care.

13). Defendant Myers either directed Corizon personnel to follow this unofficial custom and practice; or condoned and / or failed to stop this custom and practice, that resulted in a significant cost savings to Corizon at the detriment to Plaintiff and other HCV inmates.

14). In 2015, Mr. Thomas Reimers, FDC Director of Health Services, responsible for overseeing the contractors (Corizon and Wexford) had contacted them and expressed grave concerns that (HCV) inmates were dying from failure to treat and that this was unacceptable to the FDC.

15). According to a Federal Hearing, under FDC's contract with Corizon, there were two ways that doctors could obtain necessary drugs for treatment. Drugs routinely prescribed were listed on the FDC-approved list, referred to as the Formulary. Those drugs were paid for directly by FDC. Drugs not listed on the Formulary had to be specially requested. Specially requested drugs were paid for by Corizon (the full risk Health Care Provider). Such drugs required a D.E.R. (Drug Exception Request). The DAA's were not included on the Formulary at that time.

16). While the FDC and Corizon personnel were apparently discussing the

ambiguities of the contract as to who was responsible for paying for the DAA's, Plaintiff's and other (HCV) inmates disease, was continuing to progressively advance, causing severe injury / damage to Plaintiff's liver. Further subjecting Plaintiff to ongoing pain and suffering, physiological stress; compounded by the fact of placing Plaintiff at an ever increasing considerable life time risk of developing liver cancer in the future, by allowing the disease to continue onward to an advanced stage, which it reached.

17). Plaintiff had specifically inquired about this new cure drug, after learning of it through a T.V. Add for Harvoni. This is documented on a C.I.C. held on 12-29-14. On subsequent C.I.C. Reviews on, 4-29-2015, 7-27-2015 and 1-25-2016 Plaintiff was submitted by request on the C.I.C. form for (HCV) treatment. However, the ugly head of the custom and practice of no-specialty evaluation, no-treatment policy was reared by as yet to be identified John / Jane Doe # 1 who denied the request, without even the benefit of a Specialist Review.

18). There can be no doubt as to the actual existence of this unofficial custom and practice employed systematically effecting thousands of confirmed (HCV) inmates. Where only (10) HCV inmates were treated prior to November of 2017 with DAA's in the FDC.

19). To the best of Plaintiff's knowledge and belief, Defendant Jones, former

Secretary of FDC from January, 2015 through January, 2019. Defendant Jones was fully aware via, FDC Health Medical Director, Thomas Reimers Office as well as the hundreds of Medical grievances regarding HCV issues, of this horrific medical tragedy that was ongoing and yet chose not to take any meaningful steps to stop her subordinates or contractor from allowing it to continue.

20). Defendant Jones did not facilitate the necessary policy changes to reflect the New Revised Standard of Care, as put forth by a panel of Experts from the HCV – Guidance; nor did she follow or model the F.B.O.F. Policy change in July of 2015, until after Corizon had ended their contract with FDC.

21). A Federal Judge from this district had stated concerning the new contract with Centurion of Florida after Corizon had left, in the summer of 2016; "but the change in contractor did not come with a change in behavior; inmates with HCV were still not being treated."

22). Defendant John / Jane Doe #2, an FDC subordinate to Defendant Jones (as yet to be identified through discovery) had rejected two separate legislative purposed budget request by FDC Director of Health Services Reimers to obtain funding for fiscal years 2016-2017 and the following year of 2017-2018 to purchase the (DAA's) for treating HCV inmates.  The rejection of these two request from within the FDC's own department after Director Reimers had expressed grave concerns to

the Medical Contractors failure to provide treatment of dying HCV inmates, reflects not only a contradiction to FDC's new policy of treating HCV inmates with DAA's, it reflects a total disregard for human life.

23). Defendant John / Jane Doe #2, had deliberately chose to deny these request as opposed to forwarding such request and allowing the Florida Legislators to make that determination as a collective body, not a sole individual choice.

24). Defendant Jones, had the authority and final said within her own department to override such a decision, the rejection of those purposed budget requests, for tens of millions of dollars, to address this critical medical need, but chose not too. By not overriding these rejections, she deliberately took the teeth out of her revised policy regarding treatment with DAA's and condemned Plaintiff and thousands of other HCV inmates of the desperate need of this break-through cure.

25). Defendant Love, Vice-President of Operations, for Centurion of Florida, LLC, the current contracted Health Care Provider, also had a similar custom and practice of no-evaluation and no-treatment referral by any of their medical staff. This practice on the surface appears to be complicit with and attempts to shield FDC for its lack of available funds, to provide proper evaluation and treatment in accordance to Defendant Jones' 2016 Revised (HCV) Policy and the nationally recognized standard of care.

26). Defendant Love, "responsible for all operations of Centurion within Florida, who either directed, condoned or failed to stop this custom and practice by all Centurion personnel working with FDC institutions. This practice was systematically employed on 99.99% of (HCV) inmates at U.C.I., numbering more than one hundred inmates.

27). To the best of my knowledge and belief, prior to the November 2017, Court Order to treat the class members of (HCV); not one (HCV) inmate under Centurions Care at U.C.I. was submitted for treatment. Subsequent to the Court Order, it was determined through proper testing (Fibro-test) that over sixty were classified as "Priority Level-One" and required immediate treatment. Without the filing of that suit and the following Court Order, the Court itself wondered how long would this previous custom and practice would have continued.

28). This custom and practice being directed or condoned by Defendant Love and followed and applied by Defendant Dr. Perez, not only saved considerable expense but provided what Plaintiff terms, "plausible deniability." If a definite evaluation by a Specialist was given, they (Centurion) could not deny the necessity for treatment. Therefore, Centurion could not shield the FDC, who claims lack of funds for treatment, thus complicity.

29). Former Medical Director for Centurion, Dr. Daniel Cherry was charged by position to direct over all Health Care Services to inter *alia*, prisoners' having

(HCV). This defendant did act in agreement per custom and practice of preventing specialty evaluation and treatment, as directed or condone by defendant Love. This defendant was also charged with compiling a list of all (HCV) inmates for treatment, which he failed to do, on over a year.

30). Defendant, Dr. Perez, who was the (CHO) Chief Health Officer on site at U.C.I., from the summer of 2016 through the summer of 2018. Dr. Perez on 10-17-2016, conducted a C.I.C. Review of Plaintiff's HCV. Dr. Perez had refused to request a Specialty Evaluation and / or to be re-submitted for treatment, as he had previously done back on 7-25-15, while employed by Corizon. This action by Dr. Perez, was contrary not only to his previous position with Plaintiff's condition, but also was contrary to the Lab results of 10-1-16, reflecting some of the highest ALT & AST enzyme levels and other indicators ever recorded on Plaintiff's Reviews. Defendant Dr. Perez's actions were indicative of this custom and practice of Centurion's unofficial policy.

31). On 10-16-2017, Dr. E. L. Toledo had conducted Plaintiff's C.I.C. for (HCV) Review. Plaintiff had informed Doctor Toledo, that he was continuously experiencing pain in the liver area. Plaintiff had requested treatment or at least to be seen by Specialist. Dr. Toledo, refused to submit for either and noted that Plaintiff was stable according to his enzymes levels. Forty-five days later it was determined by a Lab Report, Plaintiff had "Severe Fibrosis."

7 I

32). The FDC was ordered to devise a schedule and start treating HCV inmates based on severity. Centurion then evaluated by a simple blood test, called Fibro-test that had been FDA approved and available since 2009.

33). According to the Lab results of this Fibro-test done on 11-30-17, revealed. Plaintiff's score was a .93, reflecting "severe fibrosis." In March of 2018, Doctor / Defendant Perez informed Plaintiff of this score and that he was a Priority Level-One for treatment.

34). This was the first time since the original diagnosis in 2001, that Plaintiff was informed of the actual stage of the disease. Although Plaintiff had believed his condition was bad for the last three years, based on the physical pain and previous Lab reports, recommendations for evaluation and treatment; Plaintiff was shocked at this actual level of progression.

35). Plaintiff started treatment with the (DAA) called Ecpluse on 3-9-18 and completed it on 5-31-18. Plaintiff was given another test approximately three months later to determine the treatment's success. The results of that test indicated that there was no detectible trace of the virus at that time.

36). On August 24, 2018, Ms. C. Caudilla, (A.R.A.P.) informed Plaintiff that the Lab results indicate no detectable HCV virus in Plaintiff's blood. Plaintiff had stated it was good news, however, Plaintiff still had great concerns because of the

pain and occasional cramping he was still experiencing during and especially after treatment. She seemed perplexed by this revelation.

37). Plaintiff was never informed he might be a candidate for liver transplant, due to his severe fibrosis. Nor has he been evaluated by a Specialist as of this complaint being filed.

38). According to experts and the panel on HCV-Guidance, that individuals who have progress to advance fibrosis or cirrhosis, are at a considerable life time risk of developing liver cancer in the future, even if they are sustain responders to treatment.

39). Plaintiff has grave concerns of his future health and post-treatment care. Plaintiff has still not been seen and evaluated by a Specialist. Plaintiff has been to sick-call for urinating blood. Upon review by J. Putney (A.R.N.P.) stated after Plaintiff requested evaluation by a Specialist stated, "I'd like to, but Centurion protocol will not allow me too."

40). Ultrasounds given in the past are not effective. If they were the half dozen previous ones done on Plaintiff prior to treatment, would have detected the (HCV) progressing towards, "Severe Fibrosis" instead of reflecting "Normal."

41). The HCV-Guidance panel of experts have stated, "Individuals with severe

7 K

fibrosis require surveillance monitoring for liver cancer, esophagcal avarices and hepatic function. They recommend, vibration-controlled transient liver elastography, combined with a C.T. Scan for all individuals with advance fibrosis, liver cancer screening dictates a minimum of evaluation every (6) six months using these imaging.

42). Plaintiff does not want to end up like inmate James Clark, #537252, who has been at U.C.I. since 2015 and diagnosed with (HCV) and now undergoing a radical procedure for liver cancer, in attempt to reduce it size so they can operate. The FDOC,  and Centurion current post-care of (HCV) inmates is as dismal as their previous pre-care of (HCV) inmates and will require an injunction for Plaintiff to receive proper standard of care for post-care of (HCV) inmates.

43). Had the above defendant's provided the standard of care with the available cure in a timely fashion, which has now resulted in the advanced progression of liver damage (Metavir F3 of F4); because of this custom and practice, necessitates the standard of care, for post-care of Plaintiff's serious medical needs.


## VI.  **STATEMENT OF CLAIMS**

Defendant-Woodrow A. Myers, Jr., Chief Operating Officer (Corizon)

43). Plaintiff  incorporates by reference paragraphs (#7 through #18) and states:

## V.    STATEMENT OF FACTS:

State briefly the FACTS of this case.  Describe how <u>each</u> Defendant was involved and what each person did or did not do which gives rise to your claim.  In describing what happened, state the names of persons involved, dates, and places.  <u>Do not make any legal arguments or cite to any cases or statutes.</u>  You must set forth separate factual allegations in separately numbered paragraphs.  You may make copies of this page if necessary to supply all the facts.  Barring extraordinary circumstances, no more than five (5) additional pages should be attached.  **(If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)**

PLEASE SEE Attached, pages 7A - 7J

7

## VI.    STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V. If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.

*Please See Attached pages 7J - 8D*

## VII.    RELIEF REQUESTED:

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/ statutes.

*Please See Attached pages 8D - 8F*

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**

Feb 13, 2019
_____
(Date)

Thomas R. Hayes
_____
(Signature of Plaintiff)

### IF MAILED BY PRISONER:

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one): ☑ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on: the _14_ day of _Feb._ , 20_19_.

Thomas R. Hayes
_____
(Signature of Plaintiff)

Revised 07/02

RECIEVED
UNION CORRECTIONAL INSTITUTION

FEB 1 4 2019

BY:_____
FOR MAILING

8

This Defendant while in his official capacity, acting under color of State Law and in his individual capacity; did implement or condone an unofficial custom and practice that led to deliberate indifference to Plaintiff's serious medical needs. The Defendant either directed his subordinates i.e., Defendant R. LaFontant and John / Jane Doe #1, to act in this matter, or knew that his subordinates would act in this manner and failed to stop them from doing so. This custom and practice was the moving force behind the deliberate indifference that violated Plaintiff's 8th Amendment Right.

44). Defendant-Doctor R. LaFontant – (Corizon)

Plaintiff incorporates by reference, paragraphs (#7, #8, #13, #17, #18) and states: This Defendant while in his official capacity, acting under color of State Law and in his individual capacity; did follow this unofficial custom and practice of no-specialty evaluation, which led to the deliberate indifference of Plaintiff's serious medical needs. This applied custom and practice by the Defendant was the moving force behind the deliberate indifference that violated Plaintiff's 8th Amendment Right.

45). Defendant John / Jane Doe #1 – (Corizon)

Plaintiff incorporates by reference paragraphs (#9, #13, #16, #17, #18) and states; This Defendant or defendants, while in his / her official capacity, acting under color of State Law and in his / her individual capacity; did deny submitted request

for treatment on three separate occasions in furtherance of this custom and practice of no-treatment for (HCV) inmates and Plaintiff, which led to the deliberate indifference of Plaintiff's serious medical needs in violation of Plaintiff's 8th Amendment Right

Defendant- Julie Jones, Former Secretary of FDC.

46). Plaintiff incorporates by reference paragraphs (#11 through #16) (#19 through #24) and states: This Defendant, while in her official capacity, acting under color of State Law and in her individual capacity; within her four year tenor of the FDC, her actions and inactions with regards to updating FDC (HCV) policy for the standard of care and ensuring that those policies were adhered to by both Corizon and Centurion Health Care Providers, as well as her subordinates within the FDC in obtaining necessary funding to carry out said policies, led to the deliberate indifference that denied Plaintiff's serious medical needs who now has severe fibrosis, in violation of his 8th Amendment Right of the U.S. Constitution.

Defendant- John / Jane Doe #2—FDC.

47). Plaintiff incorporations by reference paragraphs (#24 through #16) (#22 and #23) and states: This Defendant, while in their official capacity, acting under color of State Law and in their individual capacity; did deny submitted budget legislative proposed request from FDC Director of Health Service to obtain funding for DAA's for two consecutive FDC fiscal years, that led to the denial of a cure for

Plaintiff's and others with (HCV) and deliberately deprived Plaintiff of the proper standard of care, thereby violating his 8th Amendment Right under the U.S. Constitution.

Defendant- Mark S. Inch, Secretary of FDC.

48). Plaintiff incorporates by reference paragraphs (#35 through #42) and states: This Defendant, now in his official capacity, acting under color of State Law, the current FDC Secretary as of January, 2019, is responsible for all policies regarding the standard of care for (HCV) post-care for inmates under his care. The lack of an updated policy and its application, amounts to a deliberate indifference to a serious medical need and violates Plaintiff's 8th Amendment U.S. Constitutional Right.

Defendant- Victoral Love, Vice-President of Operation, Centurion of Florida.

46). Plaintiff incorporates by references paragraphs (#25 through #31) and states: This Defendant while in her official capacity, acting under color of State Law and in her individual capacity; did implement and / or condone an unofficial custom and practice of no-Specialty evaluation and treatment for Plaintiff and other (HCV) inmates, that led to deliberate indifference to Plaintiff's serious medical needs. Defendant knew that both the national recognized standard of care and the updated FDC (HCV) policy was not being followed by Centurion personnel by the fact that practically no (HCV) inmate had been submitted out of hundreds of (HCV) inmates on C.I.C. Review. This custom and practice was the moving force behind

Plaintiff's and others with (HCV) and deliberately deprived Plaintiff of the proper standard of care, thereby violating his 8th Amendment Right under the U.S. Constitution.

Defendant- Mark S. Inch, Secretary of FDC.

48). Plaintiff incorporates by reference paragraphs (#35 through #42) and states: This Defendant, now in his official capacity, acting under color of State Law, the current FDC Secretary as of January, 2019, is responsible for all policies regarding the standard of care for (HCV) post-care for inmates under his care. The lack of an updated policy and its application, amounts to a deliberate indifference to a serious medical need and violates Plaintiff's 8th Amendment U.S. Constitutional Right.

Defendant- Victoral Love, Vice-President of Operation, Centurion of Florida.

46). Plaintiff incorporates by references paragraphs (#25 through #31) and states: This Defendant while in her official capacity, acting under color of State Law and in her individual capacity; did implement and / or condone an unofficial custom and practice of no-Specialty evaluation and treatment for Plaintiff and other (HCV) inmates, that led to deliberate indifference to Plaintiff's serious medical needs. Defendant knew that both the national recognized standard of care and the updated FDC (HCV) policy was not being followed by Centurion personnel by the fact that practically no (HCV) inmate had been submitted out of hundreds of (HCV) inmates on C.I.C. Review. This custom and practice was the moving force behind

the deliberate indifference that violated Plaintiff's 8th Amendment Right.

Defendant-Dr. E. Perez-Lugo, Chief Health Officer, Centurion of Florida.

Defendant-Dr. Daniel Cherry, former Medical Director (Centurion).

47). Plaintiff incorporate by reference paragraphs (#25 through #43) and states: This Defendant while in his official capacity, acting under color of State Law and in his individual capacity; did follow this unofficial custom and practice of no-specialty evaluation and treatment for (HCV) Plaintiff  and others. He serious delayed compiling at list of (HCV) inmates for treatment, until a Court Order was issued, which led to the deliberate indifference to Plaintiff's serious Medical needs in violation of his 8th Amendment Right under the U.S. Constitution.

Defendant-Dr. E. Perez-Lugo, Chief Health Officer, Centurion of Florida.

48). Plaintiff incorporates by reference paragraphs (#17, #28, #30) and states: This Defendant while in his official capacity, acting under color of State Law and in his individual capacity, did knowingly followed this custom and practice of no-specialty evaluation and no-treatment policy employ at U.C.I. from the summer of 2016 through the summer of 2018, that led to the deliberate indifference to Plaintiff's serious medical needs in violation of Plaintiff's 8th Amendment Right under the U.S. Constitution.

Defendant-Dr. E. L. Toledo, Centurion of Florida.

49). Plaintiff incorporates by referenced paragraphs (#31, #32) and states:  This

Plaintiff's and others with (HCV) and deliberately deprived Plaintiff of the proper standard of care, thereby violating his 8th Amendment Right under the U.S. Constitution.

Defendant- Mark S. Inch, Secretary of FDC.

48). Plaintiff incorporates by reference paragraphs (#35 through #42) and states: This Defendant, now in his official capacity, acting under color of State Law, the current FDC Secretary as of January, 2019, is responsible for all policies regarding the standard of care for (HCV) post-care for inmates under his care. The lack of an updated policy and its application, amounts to a deliberate indifference to a serious medical need and violates Plaintiff's 8th Amendment U.S. Constitutional Right.

Defendant- Victoral Love, Vice-President of Operation, Centurion of Florida.

46). Plaintiff incorporates by references paragraphs (#25 through #31) and states: This Defendant while in her official capacity, acting under color of State Law and in her individual capacity; did implement and / or condone an unofficial custom and practice of no-Specialty evaluation and treatment for Plaintiff and other (HCV) inmates, that led to deliberate indifference to Plaintiff's serious medical needs. Defendant knew that both the national recognized standard of care and the updated FDC (HCV) policy was not being followed by Centurion personnel by the fact that practically no (HCV) inmate had been submitted out of hundreds of (HCV) inmates on C.I.C. Review. This custom and practice was the moving force behind

PUNITIVE DAMAGES

Plaintiff seeks damage in the amount of $100,000.00 dollars from each of the above named defendants in their individual capacity. In doing so, Plaintiff states in sum that punitive damages are appropriate where the actions and inactions of these Defendants are so reprehensible, in that Defendant's not only knew the Medical risk imposed on Plaintiff by, denying specialty evaluations, treatment, proper policies recognizing the Nationally Standard of Care of (HCV) inmates and necessary funding for the above. The Defendants knew previous (HCV) inmates had not only died from failure to treat, but continued this custom and practice knowing they were subjecting Plaintiff to on-going pain and suffering because of the advanced stage of damage and are subjecting Plaintiff to future considerable life-time risk of developing liver cancer and other complication. They deliberately ignored their individual responsibilities to ensure adequate care. The Defendants conduct was motivated by either greed for profits or saving of budgeted expenditures, that involved reckless and callous indifference to the Federally protected rights of Plaintiff.

Prevailing party fees, for postage, copying cost, court cost and Attorney fees and any other that this court deems appropriate and trial.

# APPENDIX

# OF

# EXHIBITS

## Exhaustion   Documents

## by date order

**FLORIDA DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☒ Warden      ☐ Assistant Warden      ☐ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse**, on the behalf of:

_Hayes,      Thomas      R._____      _053503_____      _Union - S.W. Unit_
Last      First      Middle Initial      DC Number      Institution

---

Part A – Inmate Grievance

This is a Medical Grievance

Although I am currently being treated for CHCV) as of 3-9-18 and the treatment has been highly successful in its cure & rate of the disease, unfortunately, it does not reverse the damage already caused by the progression of the disease.

Because of the Florida Department of Corrections, this institution and its contracted Health Care Provider's inadequate policies & practices, failure to "timely treat" me with these (DAA's) direct-acting antivirals four years ago (which were available then) this disease has progressed to irrepairable injury and cirrhosis.

Because of this failure to provide timely treatment that meets not only constitutional requirements, but also recognized as the medically accepted standard of care for CHCV) patients. This failure has also caused my life span to be shorten and the quality of that remaining time will likely be very poor.

These failures clearly reflect a deliberate indifference to my serious medical needs. Especially in light that I was originally diagnosed back in 2002 with (HCV)

I respectfully request a half-million dollars in damages, or immediate release, to some what compensate for this failure

_3-26-18_
DATE

_Thomas R. Hayes #053503_
SIGNATURE OF GRIEVANT AND D.C. #

---

***BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:**

**SEE ATTACHED RESPONSE**

_____ Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _3/26/18_
(Date)

Institutional Mailing Log #: _1803-213-119_

_S. Blaney_
(Received By)

DISTRIBUTION:      INSTITUTION/FACILITY      CENTRAL OFFICE
                   INMATE (2 Copies)          INMATE
                   INMATE'S FILE              INMATE'S FILE - INSTITUTION./FACILITY
                   INSTITUTIONAL GRIEVANCE FILE   CENTRAL OFFICE INMATE FILE
                                              CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Effective 11/13)      Incorporated by Reference in Rule 33-103.006, F.A.C.

**PART B - RESPONSE**

| HAYES, THOMAS | 053503 | 1803-213-119 | UNION C.I. | A11021 |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Log #1803-213-119

THIS DOCUMENT MAY CONTAIN CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR THE ADDRESSEE ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

Your request for Administrative Remedy or Appeal has been reviewed and evaluated.

Reviewed records indicate that you currently being followed by the clinician in Clinic for this issue. There is no indication that you have been denied medical care or access to medical. Should you have questions or concerns about your current treatment plan, Sick-Call is available so that you may present your concerns to your current health care team.

Based on the above information, your grievance is denied.

You may obtain further administrative review of your complaint by obtaining Form DC1-303, Request for Administrative Remedy or Appeal, completing the form, and providing attachments as required by Chapter 33-103 and forwarding your appeal to the Bureau of Inmate Grievance Appeals, 501 South Calhoun St., Tallahassee, Florida, 32399-2500, within 15 calendar days of this mailed response.

E. Perez, CHO                                    T. Knox, Assistant Warden

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 4/5/18 DATE |
|---|---|---|

MAILED

APR 06 2018

UCI GRIEVANCE OFFICE

Medical

**FLORIDA DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

RECEIVED
APR 19 2018
[stamp: Inmate Grievance Appeals]

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☐ Warden    ☐ Assistant Warden    ☒ Secretary, Florida Department of Corrections

From or IF Alleging Sexual Abuse, on the behalf of:

| HAYES | THOMAS | R. | 053503 | Union Correctional - SW Unit |
|-------|--------|-----|--------|------------------------------|
| Last | First | Middle Initial | DC Number | Institution |

18-6-16849

---

Part A – Inmate Grievance

This is an Appeal Grievance, with the attached initial grievance and response, in accordance with F.A.C. Chapter-33

The institutional response failed to address the issue, which is: "timely treatment" with newly available DAAs. The Secretary of F.D.O.C., Union Correctional Inst. and the two Health Care Providers (Corizon & Centurion) particularly for the last four years, have been deliberately indifferent to my serious medical needs.

Since mid-2013, these new revolutionary drugs called (DAAs) that are FDA approved, have been available. They have been proven to be highly effective at removing the virus (HCV) from the patient. (95% to 97%) Failure to timely treat with these new (DAAs) to stop the progress of injury and rid the body of the virus, is inhumane and unconstitutional. This failure has allowed the diease to now progress to "severe fibrosis", confirmed by outside lab reports.

The Secretary of F.D.O.C. is not only ultimately responsible for all policies & practices, but also to ensure all inmates are provided with timely adequate medical care that complies with constitutional requirements. The Secretary is equally responsible to ensure these private health care companies are also in compliance and meet constitutional medical requirements. Simply drawing blood and monitoring my diease "progression" for years and never having a biopsy done and only treating me now, because of a court-order, after I have advanced to "severe fibrosis", is clearly not timely adequate medical care! I have been denied timely adequate medical care, (contrary to the initial response) in violation of my right to be free from cruel & unusual punishment. I request the same relief.

April 16, 2018
DATE

J. Thomas R. Hayes # 053503
SIGNATURE OF GRIEVANT AND D.C. #

---

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:**

___/___   Signature
#

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

**Receipt for Appeals Being Forwarded to Central Office**

Submitted by the inmate on: 4-16-18    Institutional Mailing Log #: 129376    K Barrett
(Date)                                                                    (Received By)

07H

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE |
|---------------|---------------------|----------------|
| | INMATE (2 Copies) | INMATE |
| | INMATE'S FILE | INMATE'S FILE - INSTITUTION./FACILITY |
| | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE |
| | | CENTRAL OFFICE GRIEVANCE FILE |

Rec. 4/16/18   SDN

1803-(213)-119

DC1-303 (Effective 11/13)                 Incorporated by Reference in Rule 33-103.006, F.A.C.

# STATE OF FLORIDA
## DEPARTMENT OF CORRECTIONS
### INTEROFFICE MEMORANDUM

**DATE:**　　　　**June 5, 2018**

**TO:**　　　　　**I/M Hayes, Thomas　　DC# 053503**

**INSTITUTION:**　**Union CI**

**FROM:**　　　　**Bureau of Inmate Appeals**

**RE:**　　　　　　**CORRESPONDENCE**

_A1102_

---

1) ____ Your administrative appeal was received, reviewed and recently answered.  You should soon receive a copy, if you haven't already.

2) ✗ Your administrative appeal has been received in our office and is still under investigation.  As soon as our investigation is complete, you will receive an answer.  Appeal #18-6-16849 was forwarded to Health Services in Central Office for their review and/or response,

3) ____ Your administrative appeal has not been received in this office.

4) ____ Departmental Rule 33-103.007, Appeal to the Secretary, states, "attachments are considered a part of the grievance and will not be returned to the Inmate, except in those cases where the Inmate submits sufficient copies of the attachments at the time the grievance appeal is filed".  In reviewing your file, I find that you did not provide sufficient copies of the documents required.

5) ____ There is no provisions in the Inmate Grievance Procedure for you to appeal a decision already rendered by this office.

6) ____ The grievance procedure requires that you:  1) use proper forms when initiating a grievance, and 2) that you initiate your grievance at the appropriate level of the procedure as outlined in Chapter 33-103, subsections .005 informal grievance; .006 formal grievance—institution or facility; and .007 appeals to the Office of the Secretary.  Your communication to this office is returned to you for reason 1 or 2 or both as applicable.  You may re-initiate your complaint following proper procedures.  You must be within the appropriate time frame for your appeal to be accepted.

7) ✗ 1) The grievance procedure or the appeals office is not to be used for correspondence purposes. 2) The act of asking questions or seeking information, guidance or assistance is not considered to be a grievance. 3) You cannot use the grievance procedure to complain about issues not under the control of the Department. Refer to Chapter 33-103.001.

8) ____ When (re)submitting an appeal, you  must write that appeal on a new/unused DC1-303 form, attach all pertinent forms and continuation sheets to include the formal grievance and file within the appropriate time frame.

**NOTE: Your correspondence was forwarded to this office for review and response.** Furthermore, if you fear staff, you need to file an informal to the Colonel. The Colonel should have the opportunity to address these issues regarding staff at the institution. When making allegations of staff misconduct, provide all pertinent information such as names, dates, times, places and specific details. If you fear another inmate, contact the shift officer in charge for immediate action. If you feel you need medical attention, contact the institutional medical department via the sick call/emergency process.  Each grievance/appeal should address only one issue.  Seek assistance from the library or a staff member for a better understanding of the grievance process.

___W. Millette_____
Correctional Services Assistant Consultant

JUL 2 0 2018

Department of Corrections
Bureau of Inmate Grievance Appeals

**PART B - RESPONSE**

| HAYES, THOMAS | 053503 | 18-6-16849 | UNION C.I. | A11021 |
|---|---|---|---|---|
| NAME | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Appeal Denied:

Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.

It is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing.

It is determined that the response made to you by Dr. Perez on 4/5/2018 appropriately addresses the issues you presented.

Records provided to this office reveal that you are currently being treated for the medical concern you are grieving.

Please be advised that you cannot use the grievance process for monetary gain and/or tort claims.

Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY.
UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

Michelle Schouest, IISC

| | | |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

**FLORIDA DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☒ Warden ☐ Assistant Warden ☐ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse**, on the behalf of:

Hayes, Thomas R.        053503        Union Correctional - S.W. -Unit
Last    First    Middle Initial       DC Number              Institution

| Part A – Inmate Grievance |
|---|

This is a formal medical grievance filed in Accordance with the Fla. Admin. Code, Chapter 33-103,

Inadequate post-care policies, custom and practices of subsequent follow-up care for (CHCV) inmates.

Grievant had received and completed treatment on 5-31-18. Although they inform me the virus is undetectable now, unfortunately the damage caused by allowing the virus to progress to the point of "severe fibrosis" did not.

Grievant is continuing to experience periodic sharp pains, cramping and discomfort in the liver area. Grievant has expressed this to C. Caudilla, ARNP on a previous review when she informed me of the undetectable virus. Later I informed J. Putney ARNP on a review of sick-call, on urination of blood. Ms Putney stated that Centurion protocol would not permit her to submit me for review by a specialist.

Grievant has grave concerns of possibly developing liver cancer, since relevant medical data shows Grievant is now (2 to 5) higher risk of developing liver cancer due to his situation. The F.D.O.C has both a State and Federal responsibility to ensure that grievant and others like me provided with adequate medical care that not only is the recognized standard of care but complies with the minimum constitutional requirements. The (AASLD) (IDSA) and the N.I.H. state: persons with advanced liver disease, also require long-term follow-up and HCC surveillance regardless of treatment outcome.

I request that Centurion medical staff here, provide the adequate post-care treatment that meets the recognized standard of care and that the institutional staff will ensure that this medical care is fulfill.

12-9-18                    Thomas R. Hayes #053503
DATE                       SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:  X / X V V
                                                                        #      Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: 12/10/18   Institutional Mailing Log #: 1812-313-024   (Received By)
                            (Date)

DISTRIBUTION:   INSTITUTION/FACILITY          CENTRAL OFFICE
                INMATE (2 Copies)             INMATE
                INMATE'S FILE                 INMATE'S FILE - INSTITUTION/FACILITY
                INSTITUTIONAL GRIEVANCE FILE  CENTRAL OFFICE INMATE FILE
                                              CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Effective 11/13)        Incorporated by Reference in Rule 33-103.006, F.A.C.

**PART C - RECEIPT (TO BE COMPLETED BY DC STAFF)**

RETURN TO:

| **HAYES, THOMAS** | **053503** | **1812-213-024** | **UNION C.I.** | **A11021** |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

I ACKNOWLEDGE RECEIPT THIS DATE OF A GRIEVANCE FROM THE ABOVE INMATE IN REGARD TO THE FOLLOWING SUBJECT:

| 07 (MEDICAL) |
|---|

| **12/10/18** | **1812-213-024** |
|---|---|
| DATE | FORMAL GRIEVANCE LOG NUMBER |

*Post-Care Medical Help*

**PART B - RESPONSE**

| HAYES, THOMAS | 053503 | 1812-213-024 | UNION C.I. | A11021 |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Log #1812-213-024

THIS DOCUMENT MAY CONTAIN CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR THE ADDRESSEE ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

Your request for Administrative Remedy or Appeal has been received, reviewed and evaluated.

Reviewed records indicate that your chronic condition is being followed with regular chronic clinics, as well as routine lab work and imaging as clinically indicated. You have the option to access Sick-Call should you have further concerns.

You are being treated in accordance with FDC policy and procedure.
************************
Based on the above information, your grievance is denied.

You may obtain further administrative review of your complaint by obtaining Form DC1-303, Request for Administrative Remedy or Appeal, completing the form, and providing attachments as required by Chapter 33-103 and forwarding your appeal to the Bureau of Inmate Grievance Appeals, 501 South Calhoun St., Tallahassee, Florida, 32399-2500, within 15 calendar days of this mailed response.

C. Balbuena, MD, CHO                          T. Knox, Assistant Warden

| | | |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 12/21/18 DATE |

MAILED
DEC 2 1 2018
UCI GRIEVANCE OFFICE

**FLORIDA DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

RECEIVED

JAN 07 2019

Department of Corrections
Inmate Grievance Appeals

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☐ Warden    ☐ Assistant Warden    ☒ Secretary, Florida Department of Corrections

From or IF Alleging Sexual Abuse, on the behalf of:

HAYES _____ Thomas _____ R. _____ 053503 _____ Union Correctional - S.W. Unit
Last _____ First _____ Middle Initial _____ DC Number _____ Institution

---

Part A – Inmate Grievance                                   9-6-00976

This is an Appeal Grievance, from the denial of my formal grievance, Log # 1812-
213-024. In accordance with Florida Admin. Code, Chapter 33-103. A copy
of the initial grievance and response is attached.

The response states: "You are being treated in accordance with FDC policy
and procedure." As stated previously, I have not been seen or evaluated by
a liver specialist since I've been at U.C.I. In fact the last time I was
put in for such a review on Sept. 2013, it was denied by CUM.

It has already been determined through a blood test, that I had a (SVR)
back in September of this year. Now is when the proper post-care begins
after the virus has been removed, in response to the court ordered treatment.
I was informed by Ms. J. Putney (ARNP) that the company (Centurion's)
protocol would not permit her to submit me for a specialist evaluation.

I requested and need to be evaluated by a specialist periodically, certainly
initially, according to the Nationally recognized standard of care by the
HCV-Guidance, a resource developed by the American Association Study
of Liver Disease, (AASLD). The imaging referred to in the response was
a ultrasound, which by it's self is not reliable, according to the (AASLD)
and the fact that all previous ones performed on me, in fact did not
detect the (HCV) progressing towards "severe fibrosis", as was the case
in my situation. The only other lab work done since the (SVR) was
a urine sample, while the initial grievance was pending. To suggest
this situation could be resolved through sick-call, is beyond any
reasoning. I had previously exercised this process, to no avail.

( See Attached ADDENDUM )

12-31-18 _____                    S.Thomas R. Hayes #053503
DATE                                              SIGNATURE OF GRIEVANT AND D.C. #

---

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:

_____ / _____
#        Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006,
Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by
Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and
processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the
institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the
grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: 1-2-19
(Date)

Institutional Mailing Log #: 127198

(Received By) _____

07H

1812-(213)-024

Rec'd
1/2/19
SCO

DISTRIBUTION:         INSTITUTION/FACILITY              CENTRAL OFFICE
                      INMATE (2 Copies)                 INMATE
                      INMATE'S FILE                     INMATE'S FILE - INSTITUTION./FACILITY
                      INSTITUTIONAL GRIEVANCE FILE      CENTRAL OFFICE INMATE FILE
                                                        CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Effective 11/13)              Incorporated by Reference in Rule 33-103.006, F.A.C.

ADDENMUM TO APPEAL GRIEVANCE

I have grave concerns of the possibility of developing liver cancer in the future, because 1.) The medical data indicates, those with advance liver damage, run a considerable life time risk after treatment. 2) There is also an inmate here, who also had (HCV) and arrived here at U.C.I in 2015, and is now undergoing a radical procedure, (because the cancer has spread to far and surgery is no longer an option) in hopes of reducing the cancer in his liver. 3.) As stated numerous times to medical personnel, I continue to experience periodically pain in the liver area. Had the afore mentioned inmate received timely proper evaluation by a specialist, the cancer would not have reached this point.

I request, that the FDC revise it's policy for post-care evaluation and proper testing of HCV inmates that reflects the Nationally recognized standard of care and direct their contracted Health Care Provider (Centurion of Florida) to follow said policy.

Boiler-plate denials, not supported by medical facts, research and studies, could constitute deliberate indifference to serious medical needs and could be individually held responsible for such actions.

**PART C - RECEIPT (TO BE COMPLETED BY DC STAFF)**

RETURN TO:

| HAYES, THOMAS | 053503 | 19-6-00976 | UNION C.I. | A11021 |
|---|---|---|---|---|
| NAME | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

I ACKNOWLEDGE RECEIPT THIS DATE OF A GRIEVANCE FROM THE ABOVE INMATE IN REGARD TO THE FOLLOWING SUBJECT:

07 (MEDICAL)

| 1/2/19 | 19-6-00976 |
|---|---|
| DATE | GRIEVANCE LOG NUMBER |

**PART B - RESPONSE**

| HAYES, THOMAS | 053503 | 19-6-00976 | UNION C.I. | A11021 |
|---|---|---|---|---|
| NAME | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Appeal Denied:

Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.

It is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing.

It is determined that the response made to you by Dr. Balbuena on 12/21/2018 appropriately addresses the issues you presented.

Records reviewed indicate that to date, you have not accessed sick call to have your medical concerns evaluated.

Please be advised that an inmate does not have the right to dictate staff duties.

Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY.
UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

Michelle Schouest, IISC

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |
|---|---|---|

RECIEVED
UNION CORRECTIONAL INSTITUTION

OCT 3 0 2018

BY:_____
FOR MAILING

Woodrow A. Myers, Jr.
Chief Operating Officer
103 Powell Ct.
Brentwood, TN 37027

October 30, 2018

Re: Notice of Intent

Dear Mr. Myers:

This letter of intent serves a twofold purpose. 1). to give you and your company Corizon an opportunity to address and possibly resolve the following issues. 2). In the event it is not resolved, you are given notice that legal proceeding will have to ensue.

Your company Corizon had a substantial contract with the State of Florida, via the Florida Department of Corrections, which ended in August of 2016. Union Correctional was one of the Institutions that your company provided medical care for, it was in region II of Florida.

I arrived at Union Correctional on June of 2013. I had been diagnosed with (HCV) since 2001 and had been on a Chronic Illness Clinic (C.I.C.) since.

On 9/20/2013, while conducting a review of my (HVC), Dr. Aviles had submitted a request for special evaluation, noting on the document that a biopsy had previously been requested, but never performed. The evaluation was denied by U.M. (utilization management) and signed by Dr. R. La Fontant indicating, reliance on enzymes levels.

On 4-29-2015, 7-27-2015 and 1-25-2016, I was submitted for treatment of my (HVC) at each of these (C.I.C.) reviews by your medical staff, only to be refused for non-medical reasons, (utilization management) without the benefit of a review by a specialist. (I purchased a copy of each of these medical records recently, from the medical department at .15 a page)

The contract at the time between the State of Florida and Corizon contained the following proviso re chronic diseases:

> "Intervention for inmates with chronic diseases
> Must meet general recognized standard of case."
> Page 8 para 2

Dr. Hood, working for Corizon in July 2015, gave a deposition where he explained that Corizon is a "full risk" health care provider. Corizon assesses the inmate population and creates a budget. Then for a pre-agreed contract price, Corizon employs all medical staff in the facility and covers the cost of medication, off-site referrals and hospitalization. (See Davidson v. Corizon, Case No. 6:11-cv-03929-MHH out of Alabama)

It is my contention that Corizon, yourself and other management officials who were within the Florida region II and your utilization management personnel, through the unofficial custom and practice (that was the moving force behind) of refusing specialist evaluation and rejecting submitted recommendations for treatment on three separate times.

As a direct result of this unofficial custom and practice to save cost/profits, I not only suffered unnecessary pain, both physical and mental, but my (HCV) disease progress to " severe fibrosis " as confirmed by a fibro-test administer in November of 2017, which was F.D.A. approved since 2009 and had been available to your company.

Thanks to the case of **Hoffer v. Jones**, were the federal court granted a preliminary injunction, treatment was provided. Although I am currently a sustain responder to the treatment, which was available the entire three years I was under your company's care. I am now at a considerable lifetime risk of (two to five) time's higher rate of developing liver cancer in the future. Because the disease was allowed to progress to severe fibrosis and not treated under your medical care. I still continue to have pain and discomfort because of the damaged caused to the liver and allowed to progress to an advance liver damage, because of your company's refusal to treat.  The treatment received, removed the virus from the body, it did not repair the damaged caused by the disease.

It is my contention that because of this unofficial custom and practice of (no off-site evaluation and no-treatment) policy of Corizon, yourself and the various management personnel within this region II, were knowingly deliberately indifferent to my serious medical need and as a result, violated my constitutional right to be free from cruel and unusual punishment, all for the sake of profits.

Your company had not treated but a couple of (HVC) inmates with (DAA's) out of several thousand under your care. This fact was confirmed by the federal court in the case of **Hoffer v Jones**. I also have numerous (Declarations) from men who experienced mirrored circumstance of their (HCV) reviews and refusal of treatment, within the same time frame here and the same medical personnel.

Although you cannot turn the clock back and correct this problem, you have an opportunity here and now to somewhat compensate for these horrific actions.

If, you or your legal department have not responded with any negotiation of an adequate settlement within (30) thirty days from the stamp date on this letter, from the institutional mail room personnel, I will deem this as a denial and have no choice but to proceed to federal court for adequate compensation.

Respectfully,

*Thomas R. Hayes*

Thomas R. Hayes #03503
Union Correctional Institution
P.O. Box 1000
Raiford, Fl. 32083

pc: personal copy



# THE TOOMEY LAW FIRM

The Old Robb & Stucky Building
1625 Hendry St., Suite 203, Ft. Myers, Florida 33901
Telephone: 239.337.1630 / Facsimile: 239.337.0307
www.thetoomeylawfirm.com

Reply to: gat@thetoomeylawfirm.com
Direct Line: 239.337.0103
November 7, 2018

Thomas R. Hayes, #053503
Union Correctional Institution
PO Box 1000
Raiford, FL 32083

Re:      October 30, 2018 Notice of Intent

Dear Mr. Hayes:

This office represents Corizon Health, Inc. I am in receipt of notice letter you recently sent to my client. To evaluate this case, I will need a copy of your Florida Department of Corrections medical records. Please complete and sign the enclosed release and mail it back to me in the enclosed envelope.

Gregg A. Toomey

GAT/hms
Enclosures

The Toomey Law Firm
Gregg A. Toomey,
1625 Henry St., Suite 203
Ft. Myers, Florida. 33901



November 16, 2018


Dear Mr. Toomey

I am in receipt of your letter dated November 7, 2018 in reference to the notice of intent sent to your client (Corizon Health) on October 30, 2018.

I also understand your position to want to review my entire medical record. However, I do not feel it is in my best interest to allow your firm, a potential adversary in court, full access to these files at this time. If we cannot come to agreement on an adequate compensation for the deliberate indifference of my serious medical needs by your client, this matter unfortunately will have to proceed to the Northern District Court, Tallahassee division, under 28 U.S.C 1983 suit.

I'm sure you are aware that this is the same division where the Judge M. Walker, in Hoffer v. Jones who granted the preliminary injunction, that started the treatment for thousands of (HCV) inmates within the Florida Department of Corrections.  The  FDC is still paying a hefty price (millions) for this treatment.

 After reading this (5) five day hearing, in part the judge made it clear, that both your client and Wexford Health, had both failed to provide the recognized standard of care for (HCV) inmates. In fact, some inmates had even died due to failure to treat!

I am specifically aware of the case of Saleem v. Corizon, where the Middle District Court, Jacksonville division and appointed Harrell & Harrell as attorney of record. That case was settled by your client several months back. His (Saleem's) medical situation was almost a mirror case as mine. The same time frame as my situation, with the same personnel involved here at U.C.I. under your client's care. However, he failed to do his research as I have and discovered a very important aspect of this situation.

Because of this deliberate indifference to my serious medical need and failure to treat me accordingly to the nationally recognized standard of care, with the available known cure ( direct-acting antivirals ) not only did I experience the unnecessary pain and suffering, but because of your client's refusal to timely treat me, rejecting their own medical personnel's

recommendations to do so on three separate occasions, this conduct allowed the disease to progress to "severe fibrosis" and now subjects me to a life time risk of (2 to 5)times higher of developing liver cancer in the future. This is a medical fact published by the HCV-Guidance and the C.D.C. and widely known nationally in the medical community, including your client from 2014 to date. Your client had failed to treat 99.9% of all (HCV) inmates under their care, because of their unofficial custom, practice to save cost/profits.

To specifically address our situation, I have enclosed copies of some of my medical records, which in fact substantiate my medical contentions. After reviewing these documents and reading the Hoffer v. Jones case and the Saleem v. Corizon case, I'm hopeful that your client would consider offering a fair compensation, so it will not be necessary to proceed to court and ask for both compensatory and punitive damages, in what I see as a very viable claim on numerous personnel with your client's company.

Again, if I do not hear from your firm by the end of this month, I will deem this as a denial and have no choice but to proceed on to legal remedies.

Thomas R. Hayes #053503
Union Correctional Institution
P.O. Box 1000  - A-1102-1
Raiford, Fl. 32083

Pc: enclosures

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**
**CONSULTATION REQUEST/CONSULTANT'S REPORT**

TO Institution: GASTRO    FROM Institution: UCI    DATE OF REQUEST: 9/5/13

Reason(s) for consultation:
Evaluate and recommend diagnostic plan ✓    Type of consultation:    DATE APPOINTMENT MADE:
Evaluate and recommend treatment plan ✓    Emergency    Scanned 9/30/13
Other (specify):    Urgent    Staff Signature:
_____    Routine ✓
Follow-up consults require justification    Follow-up    APPOINTMENT DATE: _____

Condition is (check one): ☐ Acute Trauma    ☐ Acute Illness    ☑ Chronic
History of present illness (include onset, presentation, progress, therapy):
57 years old W/M has been F/U x his HCV⊕ in another
institution c/o he suppose to have a liver bx of liver

Physical findings:
Abdomen soft tenderness RUQ, Hepatomegaly noted
Sclera non icteric, Skin ∅ Jaundice Ext ∅ edema good peripheral pulses

Diagnostic findings (explain laboratory, x-ray, or other test findings):
LFT's W/N/L

Other pertinent information:
BPH, ⊕ HCV c/o pain, Hx of Syphilis, hx K stones, Hx hep B
Provisional diagnosis:
Hep C ⊕ c/o pain on RUQ, last GI 2008

Health Care Provider Signature/Stamp: _____ 9/5/13    J. AVILES, M.D. UCI
CHO/Designee Approval Signature/Stamp: _____ 9/5/13    ARA971861 AV 01

**AUTHORIZATION FOR SPECIALITY EVALUATION**
the undersigned, have had explained to me and understand that I require _____
which cannot be accomplished at _____
also understand that should hospitalization and/or surgery be necessary, a separate consent form will be
gned prior to such hospitalization and/or surgery.  I therefore consent to be referred to a reception and medical
nter, or such other health care facility as may be appropriate for the reason(s) stated, and consent to undergo
alth care services as may be necessary to evaluate my health status.

gnature of Patient:  X _____    Date: _____

gnature of Witness: _____    Date: _____

ate Name  HAYES    Thomas

# 052503    ce/Sex  m

ate of Birth  21  56

**FLORIDA DEPARTMENT OF CORRECTIONS**

# CHRONIC ILLNESS CLINIC

Clinics:  Respiratory  Endocrine  (Miscellaneous)  Cardiovascular  Tuberculosis  Immunity  Neurology  (Gastrointestinal)  Oncology

INSTITUTION: UCI   DATE: 12/29/14   TIME START: 1140   TIME STOP: 1200

**SUBJECTIVE: Chief complaint:** I/m states ↑ PND ~ 5 days. ⊕ Hx when attempting to sleep - I/m c lots of questions - re new Hep C treatment & certain eligibility (questions addressed c RN)

**Record Review since last CIC visit:** (yes) last CIC 06/12/14

Labs (12/09/14):
↑ AST/ALT = 106/142   (09/09/14 AST/ALT = 57/67)
lipids - WNL   plt = 309   U/A - WNL

**OBJECTIVE:** Temp: 96.3 °F   Pulse: 77 /min   Resp: 16 /min   BP: 121 / 83 ✓   Wgt: 173

Gen/Neuro: AAO x 3, cooperative
HEENT: (PERL ⊕ M/R/C/G) ⊘ JVD ⊘ lymphadenopathy
Cardio: ⊕ S₁S₂ ⊘ carotid bruit bilat
Pulm: ⊕ coarse A→P bilat that cleared c cough
Abd: soft / slightly rounded ⊘ hepatosplenomegaly normoactive x 4 quads
Muscl: Full ROM / steady gait s assistive devices
Skin: intact ⊘ disits breakd noted at this time

**ASSESSMENT:**

1) Hep C ⊕: Asymptomatic

2) BPH: controlled c chvrc

3) ↑ PND / URI (viral) → I/m instructed to request "sick-call" if symptoms worsen s/or last longer than 2-3 weeks

**CHRONIC ILLNESS EDUCATION**

✓ DISEASE PROCESS
✓ MEDICATION: COMPLIANCE
   INSTRUCTIONS/SIDE EFFECTS
✓ DIET/EXERCISE
✓ TREATMENT COMPLIANCE
✓ SMOKING CESSATION
✓ RISK FACTORS/RESTRICTIONS

**PLAN:**

**Medication:** rewritten cs chvrc

Orders signed off:
MW R 12/30/14
T. CONROY, LPN
UNION CI/CORIZON

**Labs:** c next CIC: CMP / CBC / lipids / TSH / T₃ T₄ + Free T₄

ORDERS SIGNED OFF:
UNION CI
DATE:
EDUCATION GIVEN:

**Consultations (if needed):**

CARDIOVASCULAR   TUBERCULOSIS
RESPIRATORY   IMMUNITY
ENDOCRINE   NEUROLOGY
MISC.   GASTROINTESTINAL
ONCOLOGY   KIDNEY

**Other:**

Health Classification Grade reviewed: M₂   Follow-up visits: 3-4 months

SIGNATURE: [signature] ARNP-BC

SIGNATURE

RTC 4.29.15
Req. to lab
Req. registry

STAMP:
P. SCHNEIDER, ARNP
UNION CI/CORIZON

Inmate Name Hayes, Thomas
DC# 053503   Race/Sex WM
Date of Birth 2-4-56
Institution UCI

DC4-701F (Revised 3/8/13)
This form is not to be amended, revised, or altered without approval of the Director of Health Services Administration.

**Current Medications & Dosage:**
1) Hytrin 1 mg qhs
2)
3)
4)
5)
6)
7)
8)
9)
10)

FLORIDA DEPARTMENT OF CORRECTIONS

## CHRONIC ILLNESS CLINIC

**Clinics:** Respiratory  Endocrine  Miscellaneous  Cardiovascular  Tuberculosis  Immunity  Neurology  (Gastrointestinal)  Oncology

INSTITUTION: _UCI_  DATE: _4/29/15_  TIME START: _6:55_  TIME STOP: _11:10_

**SUBJECTIVE: Chief complaint:** _Hep C clinic_

**Current Medications & Dosage:**
1) _Hytrin 5mg qhs_
2)
3)
4)
5)
6)
7)
8)
9)
10)

**Record Review since last CIC visit:** _labs review with_
_pt._
_regularly treated for hep C_

**OBJECTIVE:**  Temp: _97.4_ °F   Pulse: _86_ /min   Resp: _16_ /min   BP: _126 / 86_   Wgt: _174_

HEENT — clear   ABD — no distention, no tenderness
neck — supple, no masses   no liver, no palpable,
Cardio — regular RRR   no rigidity, no guarding,
Lungs — clear, no wheezing   no distention
Skin — no jaundice

**ASSESSMENT:**
① Hepatitis C
② BPH

## CHRONIC ILLNESS EDUCATION

DISEASE PROCESS
MEDICATION: COMPLIANCE
INSTRUCTIONS/SIDE EFFECTS
DIET/EXERCISE
TREATMENT COMPLIANCE
SMOKING CESSATION
RISK FACTORS/RESTRICTIONS

_(PE done)_

**PLAN:** _Begin Hep C treatment protocol_   Orders signed off:

**Medication:** _____
UNION CI
DATE: _4/30/15_  ORDERS SIGNED OFF: _4/30/15_

**Labs:** _CMP / CBC / LIPIDS / TSH / UA_   EDUCATION GIVEN:

**Consultations (if needed):** _GI referral regarding Hep C tx_

CARDIOVASCULAR   ✓ TUBERCULOSIS
RESPIRATORY   ✓ IMMUNITY
ENDOCRINE   NEUROLOGY
MISC.   ✓ GASTROINTESTINAL
**Other:** _3 MONTHS_   ONCOLOGY   KIDNEY

**Health Classification Grade reviewed:** _____  **Follow-up visits:** _1 week_  SIGNATURE

**SIGNATURE:** _Lee Brown MD_   _Lee Brown, MD  04.29.2015_

STAMP:

_J. Irvin, LPN_
_J. IRVIN, LPN_
UNION CI/CORIZON

_Lab Req sent_
_Rx ordered_
_TCIC 7/27/15_

Hayes, Thomas
DC# 053503
W/M  DOB 02/04/56

DC4-701F (Revised 3/8/13)
This form is not to be amended, revised, or altered without approval of the Director of Health Services Administration.

FLORIDA DEPARTMENT OF CORRECTIONS

## CHRONIC ILLNESS CLINIC

Clinics: Respiratory  Endocrine  Miscellaneous  Cardiovascular  Tuberculosis  Immunity  Neurology  (Gastrointestinal)  Oncology

INSTITUTION: _UCI_   DATE: _7/20/15_   TIME START: _1630_   TIME STOP: _1645_

**SUBJECTIVE:** Chief complaint: _Thomas said_
_Not willing like to have my hepatitis_
_C treatment_

**Current Medications & Dosage:**
1) _Hytrin 1mg qhs_
2) _____
3) _____
4) _____
5) _____
6) _____
7) _____
8) _____
9) _____
10) _____

**Record Review since last CIC visit:**
_HCV - 19_   _120 163 251_
_Hep C Ab +_   _80_
_WBK OK_
_VitC HCV 6.3_
_Tyen 50_

**OBJECTIVE:** Temp _97.3_ °F  Pulse: _62_ /min  Resp: _16_ /min  BP: _109 , 74_  Wgt: _172_

_Alit in no acute distress_
_Well developed_
_Heart regular_
_Heart/lungs_
_Chest_
_Extrem no edema_

**ASSESSMENT:**
_Hepatitis C_
_BPH_

**CHRONIC ILLNESS EDUCATION**
✓ DISEASE PROCESS
✓ MEDICATION: COMPLIANCE
✓ INSTRUCTIONS/SIDE EFFECTS
✓ DIET/EXERCISE
✓ TREATMENT COMPLIANCE
✓ SMOKING CESSATION
✓ RISK FACTORS/RESTRICTIONS

**PLAN:** _Fill out Hepatic C TREATMENT Information_

**Medication:** _Continue my Hytrin_

**Labs:** _Next year_

**Consultations (if needed):** _Hep C treatment base line information (done)_

**Other:** _Counseled on condition diet and exercise_

**Health Classification Grade reviewed** _yes_   **Follow-up visits:** _6 month_

Orders signed off:
E. PEREZ - LUGO, MD
UNION CI/CORIZON
UNION CI   DATE: _7/20/15_   ORDERS SIGNED OFF: _7/09/15_

EDUCATION GIVEN:
CARDIOVASCULAR        TUBERCULOSIS
RESPIRATORY           IMMUNITY
ENDOCRINE             NEUROLOGY
MISC.              ☑ GASTROINTESTINAL
ONCOLOGY              KIDNEY

**SIGNATURE:** E. PEREZ - LUGO, MD
UNION CI/CORIZON

**STAMP:** E. PEREZ - LUGO, MD
UNION CI/CORIZON

Inmate Name _Hayes, Thomas_
DC# _053503_   Race/Sex _WM_
Date of Birth _2-4-56_
Institution _UCI_

_RTC = 1-25-16 = GC - Orin LP_
_Rx to Pharmacy_

J. IRVIN, LPN
UNION CI/CORIZON

DC4-701F (Revised 3/8/13)
This form is not to be amended, revised, or altered without approval of the Director of Health Services Administration.

FLORIDA DEPARTMENT OF CORRECTIONS
## CHRONIC ILLNESS CLINIC

Clinics: Respiratory  Endocrine  Miscellaneous  Cardiovascular  Tuberculosis  Immunity  Neurology  (Gastrointestinal)  Oncology

INSTITUTION: _UCI_  DATE: _1/25/16_  TIME START: _1115_  TIME STOP: _1230_

**SUBJECTIVE: Chief complaint:** _____

Record Review since last CIC visit:

_no current lab_

**Current Medications & Dosage:**
1) Hytrin 1mg qd  > ordered 7/27/15 x 1 year
2)
3)
4)
5)
6)
7)
8)
9)
10)

**OBJECTIVE:** Temp: _98.6_ °F  Pulse: _100_ /min  Resp: _18_ /min  BP: _130_ / _83_  Wgt: _165_

_[handwritten clinical notes]_ — non icteric, pallor   BMI
CV —
Resp —  RUE pain worst c exertion
Derm — questionnaire lesion

**ASSESSMENT:**
#HTN — well controlled

HCV(+) — req. treatment

## CHRONIC ILLNESS EDUCATION
___ DISEASE PROCESS
___ MEDICATION: COMPLIANCE
___ INSTRUCTIONS/SIDE EFFECTS
___ DIET/EXERCISE
___ TREATMENT COMPLIANCE
___ SMOKING CESSATION
___ RISK FACTORS/RESTRICTIONS

**PLAN:**                                            **Orders signed off:**

**Medication:** D/C Hytrin

**Labs:** CBC, CMP, 2x, f/u, TSH
UNION CI
DATE: _1/26/16_  ORDERS SIGNED OFF: _HH_
EDUCATION GIVEN:

**Consultations (if needed):**

___ CARDIOVASCULAR   ___ TUBERCULOSIS
___ RESPIRATORY       ___ IMMUNITY
___ ENDOCRINE         ___ NEUROLOGY
___ MISC.             ___ GASTROINTESTINAL
___ ONCOLOGY          ___ KIDNEY

**Other:**

**Health Classification Grade reviewed:** _2_   **Follow-up visits:** _6 mo_   SIGNATURE

**SIGNATURE:** _[signature]_

**STAMP:**
C. CAUDILLA, ARNP
UNION CI/CORIZON

Inmate Name: _Hayes, Thomas_
DC#: _053503_  Race/Sex _WM_
Date of Birth: _8-4-56_
Institution: _UCI_

RTC 7-25-16  _[signature]_
Lab to lab
DC Rx to pharm
Pass issued
Rx Rescheduled   in wet 2/1/16

J. HARVEY, LPN
UNION CI/CORIZON

DC4-701F (Revised 3/8/13)
This form is not to be amended, revised, or altered without approval of the Director of Health Services Administration.

# BioReference
## LABORATORIES
an OPKO Health Company

**FINAL REPORT**

| PHYSICIAN | PATIENT | SAMPLE |
|---|---|---|
| PEREZ, ELLIOT<br><br>F7317 - UNION CORRECTIONAL INSTITUTION<br>7819 NW 228TH ST,<br><br>RAIFORD, FL 32026<br>Acct #: (F7317)         00<br>P: (386)431-4166 | HAYES, THOMAS<br>DOB: 02/04/1956 Age: 61 Y Sex: M<br>U/FL:        Bed:<br>Rm:<br>Patient ID:     053503<br>Address: 7819 NW 228TH ST,<br>         RAIFORD, FL 32026<br><br>P: | Specimen ID: 942953693<br>Date Of Report: 11/30/2017 13:55<br>Date Collected: 11/28/2017 09:29<br>Date Received: 11/28/2017 23:55<br><br><br>*North America Eastern Time* |

Notes: NON FASTING

# CLINICAL REPORT

## Clinical Abnormalities Summary: (May not contain all abnormal results; narrative results may not have abnormal flags. Please review entire report.)

DEC 01 2017

| ALT | 85 HI | | | |
| HAPTOGLOBIN | | ALPHA-2-<br>MACROGLOBULIN | 450 HI | UNION C.I. |

------* CHEMISTRY *--------

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Bilirubin, Total | 0.6 | | <1.2 | mg/dL | 11/30/17 | 0.8 | 10/03/17 |
| ALT | | 85 HI | <41 | U/L | 11/30/17 | 86 HI | 10/03/17 |
| GGTP | 46 | | 10-71 | U/L | 11/30/17 | 65 | 10/03/17 |

-* CARDIOVASCULAR/LIPIDS *--

| APOLIPOPROTEIN A1 *NJ1 | 111 | | 104-202 | mg/dL | 11/30/17 | | |

-* FIBROTEST - ACTITEST® *--

| FIBROSIS SCORE *NJ1 | 0.93 | | | | 11/30/17 | | |
| FIBROSIS STAGE *NJ1 | F4 | | | | 11/30/17 | | |
| FIBROSIS INTERP *NJ1 | severe<br>fibrosis | | | | 11/30/17 | | |
| INFLAMMATION SCORE *NJ1 | 0.72 | | | | 11/30/17 | | |
| INFLAMMATION STAGE *NJ1 | A3 | | | | 11/30/17 | | |
| INFLAMMATION INTERP *NJ1 | severe<br>activity | | | | 11/30/17 | | |

NOTE: Reported values for fibrosis and inflammation are based on methods limits for the HAPTOGLOBIN assay.

FIBROSIS AND NECROINFLAMMATION SCORES AND INTERPRETATIONS

| FibroTest Score | Metavir Score | |
|---|---|---|
| 0.00-0.21 | F0 | no fibrosis |
| 0.22-0.27 | F0-F1 | |
| 0.28-0.31 | F1 | minimal fibrosis |
| 0.32-0.48 | F1-F2 | |
| 0.49-0.58 | F2 | moderate fibrosis |
| 0.59-0.72 | F3 | advanced fibrosis |
| 0.73-0.74 | F3-F4 | |
| 0.75-1.00 | F4 | severe fibrosis |

| ActiTest Score | Metavir Score | |
|---|---|---|
| 0.00-0.17 | A0 | no activity |
| 0.18-0.29 | A0-A1 | |
| 0.30-0.36 | A1 | minimal activity |
| 0.37-0.52 | A1-A2 | |

12/01/17

E. Perez - Lugo MD
Site Medical Director
Union - Centurion

---

Florida Clinical Laboratory
27 E. Hibiscus Blvd Suite C | Melbourne, FL 32901 | (800) 229-5227

James Weisberger M.D.
Laboratory Director

Page 1 of 2
Printed 12/01/2017 07:33

BioReference Laboratories is a Florida Clinical Laboratory

# THE TOOMEY LAW FIRM

The Old Robb & Stucky Building
1625 Hendry St., Suite 203, Ft. Myers, Florida 33901
Telephone: 239.337.1630 / Facsimile: 239.337.0307
www.thetoomeylawfirm.com

Reply to: gat@thetoomeylawfirm.com
Direct Line: 239.337.0103
November 27, 2018

Thomas R. Hayes, #053503
Union Correctional Institution
PO Box 1000
Raiford, FL 32083

Re:     October 30, 2018 Notice of Intent

Dear Mr. Hayes:

I am in receipt of your recent response to my request that you sign a release for your medical records. You declined and suggested that the case should be settled. That cannot happen without your medical records being in my possession.

Gregg A. Toomey

GAT/hms

Mr. Gregg A. Toomey, Esq.
The Toomey Law Firm
1625 Henry St., Suite 203
Ft. Myers, Fl. 33091

RECIEVED
UNION CORRECTIONAL INSTITUTION
DEC 20 2018
BY:
FOR MAILING

RECIEVED
UNION CORRECTIONAL INSTITUTION
DEC 06 2018
BY:
FOR MAILING

December 20, 2018

Re: Letter from November 27, 2018

Dear Mr. Toomey,

First, I would like to thank you for your timely response in consideration of the time frame mentioned. I have signed and enclosed the medical release form you requested. However, there could be a few potential pit-falls you are not aware of.

a) Centurion is the current health care provider. I don't know if authorizing Florida Department of Corrections on the form will be sufficient for Centurion personnel to release the requested records;

b) Unless you specify what records, like only (HCV) related. I have over forty years of medical records. As I initially stated in the original letter dated 10-30-2018, I had been diagnosed since 2001;

c) I was under your client's care here at U.C.I., from June of 2013 till they left in the summer of 2016.

You probably will have to call or e-mail the medical records supervisor here and discuss the best way to get what you feel is necessary for your evaluation. I might recommend asking her to scan the records on her computer and then attach those records to an e-mail and forward to your office.

With that said, my medical contentions are legitimate. As you will see, the previous six (6) medical documents were authentic. The postage for all the records that I have would be costly for me. I'm sure you have to do it your way.

Your client and their personnel had a well-established custom and practice of no-proper evaluation and no-treatment policy, contrary to the nationally recognized standard of care. I'm sure you are well aware of the class action case of **Hoffer v. Jones**, out of the Northern District, Tallahassee.

My contention is, your client is not only responsible for the unnecessary pain and suffering I endured for those three years, **with a known cure available** when the disease was progressively getting worse in that three year period. They knew the great

risk involved by not administering treatment. This was a systematic wide custom and practice, affecting over 99.99% of all (HCV) inmates under your client's care. I still suffer this pain periodically, because your client allowed it to progress to this advance stage. (**severe fibrosis, which you already have the lab report**) Your client's utilization management personnel rejected repeated submitted request for treatment by their own hired medical personnel, for non-medical reasons (cost). Without the benefit of an evaluation by a specialist, which they also previously denied.

Because of your client's actions or inactions, I am now at a considerable life-time risk of having liver cancer, (2 to 5) time's greater. I may need a liver transplant in the future! God I hope not. What are the chances an inmate would receive one. Who would foot this bill?  Who is responsible for this occurring? These medical issues could easily come about as verified by medical experts in the medical resource material widely available. Not to mention, that the nationally recognized agencies that strongly recommended against deferral of treatment at any stage of fibrosis.

This is a serious medical situation. I sincerely hope that your evaluation will take in all these factors into consideration, when and if your client makes an appropriate settlement offer. I also hope the offer will not minimize the seriousness of this situation and this evaluation, will not be an act of futility.  Otherwise, I will have no other recourse but to proceed with the §1983 complaint already prepared to file in federal court in Tallahassee. The F.D.O.C. are also defendants in this suit as their Central Office is located in Tallahassee, for jurisdictional correctness.

In closing as you can see, I specified the time frame on the consent to 1/30/2019.

Sincerely,

Thomas R. Hayes#053503
Union Correctional Institution
P.O. Box 1000 – A1102-1
Raiford, Fl. 32083

pc: personal file
    Attachments

**FLORIDA DEPARTMENT OF CORRECTIONS**
**CONSENT AND AUTHORIZATION FOR USE AND DISCLOSURE INSPECTION AND RELEASE OF CONFIDENTIAL INFORMATION**

I, _Thomas R. Hayes_ authorize _Florida Department of Corrections_

(Name, organization or general designation of program making disclosure)

to disclose to  _The Toomey Law Firm, 1625 Hendry Street, Suite 203, Fort Myers, FL 33901_

(Name of person(s) or organization(s) and address to which disclosure is to be made)

Purpose of disclosure authorized herein: _____

The undersigned hereby authorizes the inspection and release of copies of my medical records indicated below by the above-named health care facility/medical record custodian only to the above-named **entity(ies)** or persons or their agents.  Indicate all of the records authorized to be inspected/released by **initialing** in the appropriate box(es) below:

| INITIAL BELOW FOR RELEASE OF INFORMATION | |
|---|---|
| *T.H.* | A.   Release of all medical records **except**: any information relating to HIV testing, AIDS and AIDS-related syndromes; psychiatric and psychological information; or alcohol and substance abuse treatment information related to my condition, care, and confinement (**initial box**). |
| *T.H.* | B.   Release of any records regarding HIV testing, AIDS and AIDS-related syndromes relating to my condition, care, and confinement (**initial box**). |
| | C.   Release of any records of psychiatric and psychological information (mental health records) other than psychotherapy notes relating to my conditions, care, and confinement (**initial box**). |
| | D.   Release of all dental records relating to my condition, care and confinement (**initial box**). |
| | E.   Release of any records regarding alcohol and substance abuse treatment relating to my condition, care, and confinement.   I understand that my records are protected under the federal regulations governing *Confidentiality of Alcohol and Drug Abuse Patient Records*, 42 C.F.R. Subchapter A, Part 2, and cannot be disclosed without my written consent unless otherwise provided for in the regulations.   As to release of alcohol/substance abuse treatment records, please state the specific information to be released as provided by 42 C.F.R., Subchapter A, Part 2 (**initial box**): |

Name of information -- dates of treatment/programs, etc., if possible

**NOTE: IF PSYCHOTHERAPY OR SUBSTANCE ABUSE PROGRESS NOTES ARE THE SUBJECT OF THE RELEASE, OTHER RECORDS CANNOT BE THE SUBJECT OF THE SAME AUTHORIZATION.   RELEASE OF PSYCHOTHERAPY OR SUBSTANCE ABUSE PROGRESS NOTES IN ADDITION TO THE RECORDS SPECIFIED ABOVE WILL REQUIRE A SEPARATE AUTHORIZATION (SEE BELOW).**

I understand that I may refuse to sign this authorization and my refusal to sign will not affect my access to health care treatment, eligibility for benefits or enrollment, or payment for or coverage of services.  I also understand that once my protected health information is disclosed pursuant to this authorization, it may be used and/or redisclosed by the recipient unless the recipient is covered by law which prohibits or limits its use and/or disclosure.

I understand that I may revoke this consent and authorization at any time, <u>provided the revocation is in writing</u>, except to the extent that action has been taken in reliance on it, and that in any event, this consent and authorization shall be effective for 90 days unless I specify a different expiration as follows: _JANUARY 30, 2019_

(Specification of the date, event, or condition upon which this consent expires if less than six months or greater than 90 days)

In furtherance of this authorization, I (we) do hereby waive all provisions of law and privileges relating to the disclosures hereby authorized.  I acknowledge the extent of my authorization of release as to the records and information denoted in paragraphs A, B, C, D and E by **initialing** the appropriate box(es) above.

_Thomas R. Hayes_                                    _12-6-18_

SIGNATURE OF PATIENT (Guardian or Statutorily Authorized Representative, when required)          Date

**AUTHORIZATION FOR RELEASE OF PSYCHOTHERAPY OR SUBSTANCE ABUSE PROGRESS NOTES**

I, _____ authorize _____

(Name, organization or general designation of program making disclosure)

to disclose to  _____

(Name of person(s) or organization(s) and address to which disclosure is to be made)

DC4-711B (English) (Revised 11/27/07)                    Incorporated by Reference in Rule 33-601.901, F.A.C.

## FLORIDA DEPARTMENT OF CORRECTIONS
## CONSENT AND AUTHORIZATION FOR USE AND DISCLOSURE INSPECTION AND RELEASE OF CONFIDENTIAL INFORMATION

Purpose of disclosure authorized herein: _____

The undersigned hereby authorizes the inspection and release of copies of my psychotherapy progress notes and/or my substance abuse progress notes as indicated below by the above-named health care facility/medical record custodian only to the above-named **entity(ies)** or persons or their agents.  Indicate all of the records authorized to be inspected/released by **initialing** in the appropriate box(es) below:

| INITIAL BELOW FOR RELEASE OF INFORMATION | |
|---|---|
| | A.   Release psychotherapy progress notes **(initial box)** |
| | B.   Release substance abuse progress notes **(initial box)** |

Name of information -- dates of treatment/programs, etc., if possible

I understand that I may refuse to sign this authorization and my refusal to sign will not affect my access to health care treatment, eligibility for benefits or enrollment, or payment for or coverage of services.  I also understand that once my protected health information is disclosed pursuant to this authorization, it may be used and/or redisclosed by the recipient unless the recipient is covered by law which prohibits or limits its use and/or disclosure.

I understand that I may revoke this consent and authorization at any time, <u>provided the revocation is in writing</u>, except to the extent that action has been taken in reliance on it, and that in any event, this consent and authorization shall be effective for 90 days unless I specify a different expiration as follows: _____

(Specification of the date, event, or condition upon which this consent expires if less than six months or greater than 90 days)

In furtherance of this authorization, I (we) do hereby waive all provisions of law and privileges relating to the disclosures hereby authorized.  I acknowledge the extent of my authorization of release as to the records and information denoted in paragraphs A and B **initialing** the appropriate box(es) above.

_____        _____

SIGNATURE OF PATIENT (or Next of Kin, Guardian or Authorized Representative, when required)        Date

**COMPLETE NOTARY PORTION ONLY WHEN REQUEST IS NOT FROM CURRENT INMATE/OFFENDER PERSONALLY KNOWN TO WITNESS OR IS FROM SOURCE EXTERNAL TO DEPARTMENT**

STATE OF _____
COUNTY OF _____

Sworn to (or affirmed) and subscribed before me this day of _____, 20_____,
by _____ who   is   personally   known   to   me   or   who   has   produced
_____ as identification.

_____
Notary Public Signature
   Print, type, or stamp commissioned name of Notary Public
My Commission Expires:                                        SEAL

## ACKNOWLEDGEMENT OF RECEIPT OF COPY OF SIGNED AUTHORIZATION(S)

Inmate/Offender Name <u>Thomas R. Hayes</u>               Witness Name _____
DC# <u>053503</u>                                                         Witness Signature _____
R/S _____                                                           Date:_____
Date of Birth <u>02/04/1956</u>
SS# _____
Institution/Office_____



Centurion of Florida, LLC
c/o Ana C. Francolin Donley, Esq.
121 S. Orange Ave., Suite 1500
Orlando, Florida 32301

January 2, 2019

Re:  NOTICE OF INTENT

Dear Counselor:

        This letter of Intent serves a dual purpose.

1). To give your client (Centurion of Florida, LLC) and yourself an opportunity to address and possibly resolve the following issues through a settlement agreement and avoid litigation if possible.

2). In the event we are unable to adequately resolve these issues, you are given Notice, that legal action will ensue.

        It is my contention, that your client, it's C.E.O. / President, and several doctors within the company, have been deliberately indifferent to my serious medical needs. Your client's personnel has engaged in, through an unofficial custom and practice of denying myself and practically all other (HCV) inmates, with the Nationally recognized standard of care for proper evaluation, treatment and post-care.

        Your client took over health care services in the summer of 2016, within certain regions of the Florida Department of Corrections. Union Corrections, is one of those institutions where your client provides these services to date. Also in the summer of 2016, the F.D.O.C. had officially recognized and updated their policy, with regards to the standard of care for (HCV) inmates.

        Your client had been in place (within F.D.O.C.) for approximately (16) months, when the Federal case of Hoffer v. Jones had a preliminary hearing concerning an injunction, where the court stated in pertinent part:

> "FDC began a new contract with Centurion. But change
> in contractor did not come with a change in behavior,
> inmates with (HCV) were still not being treated."

It is my contention that your client, became complicit, with the F.D.O.C., over concerns with cost and adopted a wide spread custom and practice of no-specialty evaluations and no-treatment recommendations that was imposed on practically all (HCV) inmates under your clients medical care, despite the strong medical indicators reflecting otherwise to wit;

a) The strong recommendation against deferral of treatment of individual's with advanced stage liver damage, by the HCV-Guidance, a resource developed by the America Association for the Study of Liver Disease ( AASLD).

b) The F.D.O.C.'s own Revised Policy, done at the same time your client's company came on board, recognizing the new standard of care and treatment of (HCV) inmates.

c) Your client's own expert, (Dr. Dewsnup) who has stated, he encouraged all doctors in Centurion to treat (HCV) inmates with DAA's.

d) Dr. Cherry's failure to develop a list of HCV inmates and stage them appropriately for treatment in over as year, at the request of Dr. Dewsnup.

e) The CHO on site in October of 2016, Dr. Perez refused to submit me for specialty evaluation or treatment at my C.I.C. Review, despite the fact that while working for the previous Health Care Provider (Corizon) in January of 2016 while conducting a C.I.C. Review of me, where he had submitted a request for treatment on the C.I.C. Report.

f) Dr. E. L. Toledo, on a C.I.C. Review, also refused to request either specialty evaluation or treatment in October of 2017.

Because of the <u>Hoffer</u> supra, Court Order in November of 2017, testing

began on most HCV inmates by your client, via a blood test called, Fibrotest which had been FDA (approved since 2009) was done in November of 2017 My results were a score of .93 indicating, "severe fibrosis." This was approximately (45) after my previous C.I.C. Review with Dr. Toledo, refused to request evaluation or treatment and stated, I was fine.

I was subsequently, classified as a "Priority Level-One" for treatment. I completed the treatment on May 31, 2018. Although it was determined that I had a (SVR) to treatment and the virus was undetectable as of September of 2018; unfortunately, it did not reverse or remove the damage already done to the liver, because it was allowed to progress to such a stage.

Not only do I still experience pain periodically in the liver area, I have learned through research, that since the disease was allowed to progress to an advanced stage, I am now at a considerable life time risk of developing liver cancer in the future, despite being a sustain responder to treatment. This risk (deferral denial) of treatment was widely known and published years prior to this time frame.

I have unnecessarily suffered both the physical pain and mental anguish in this time prior to treatment, during and continue to experience pain periodically, due to your client's custom and practice. I now have additional concerns of the possibility of liver cancer in the future, especially since your client's refusal of proper post-care, via a specialty evaluation to determine what actions or measures should take place.

There can be no doubt by the above detailed specific's, support by; medical documents, medical facts backed by recognized entities, coupled with Hoffer supra, that your client and named doctors have been deliberately indifferent to those serious medical needs. The moving force of this widely used custom, practice and unofficial policy, was fueled by concerns of cost, instead of human life.

Although your client can not turn back the clock and change the events and choices made. However, your client can take this opportunity to agree on an equitable settlement, which should also include a specialty evaluation. As oppose

3

to risking both compensatory and punitive damages.

In closing, if for any reason you or your client decline this potential resolution on this important matter, or I have not heard from you within (30) days from the stamped date provided by the mailroom personnel, I will deem it as a denial and have no choice, but to proceed to court for resolution.

With Kind Regards,

Thomas Hayes, #053503
Union Correctional Institution
P.O. Box 1000 A-1102
Raiford, Florida 32083

CC: Personal file

4

Thomas R. Hayes #053503
Union Correctional Institution
P. O. Box 1000 - A1102
Raiford, Fl. 32083



Mailed from a State
Correctional Institution

US POSTAGE >> PITNEY BOWES

ZIP 32083
02 1W          $ 007.35⁰
0001403805 FEB 14 2019

FEB 1 9 2019



Clerk, U.S. District Court
111 North Adams Street
Tallahassee, Fl. 32301-7730

UNITED STATES
POSTAL SERVICE.                 Retail

**P**  US POSTAGE PAID      Origin: 32083
       **$0.00**             02/14/19
                            1178600483-02

PRIORITY MAIL 2-Day ®

                            0 Lb 15.50 Oz
                                    1020

EXPECTED DELIVERY DAY: 02/19/19

                            C001
SHIP
TO:
    111 N ADAMS ST
    TALLAHASSEE FL 32301-7736

USPS TRACKING NUMBER

9505 5166 3086 9045 0133 52

**LEGAL MAIL**

RECEIVED
UNION CORRECTIONAL INSTITUTION
FEB 14 2019
BY: _____
FOR MAILING