**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**THOMAS R. HAYES,**

    **Plaintiff,**

**vs.**	    **Case No. 4:19cv97-MW/CAS**

**MARK S. INCH, et al.,**

    **Defendants.**

_____/

**REPORT AND RECOMMENDATION**

The pro se Plaintiff initiated this case in February 2019. ECF No. 1. In general, Plaintiff's complaint challenges the treatment received for the Hepatitis C Virus ("HCV"). Plaintiff was initially diagnosed with HCV in approximately October of 2001 while incarcerated in the Florida Department of Corrections. ECF No. 1 at 10. Plaintiff alleges that in June 2013, his "liver condition started to decline noticeably." *Id.* at 11. He further alleges that due to a lack of funding, proper treatment and evaluations were not performed. *Id.* at 12. By as early as December 2014, Plaintiff was requesting treatment with a "new cure drug," Harvoni. *Id.* at 14. His requests were denied pursuant to the "custom and practice of no-

speciality evaluation, no-treatment policy." *Id.*  In November of 2017, Plaintiff had "severe fibrosis" and was informed "that he was a Priority Level-One for treatment." *Id.* at 19.  He started treatment with Ecpluse, a DAA (Direct-Acting Antiviral medication), in March 2018.  *Id.*  Following his treatment in August 2018, Plaintiff's test results revealed "there was no detectible trace of the virus at that time."  *Id.*

Plaintiff alleges that although he was pleased with the results, he was still experiencing pain and cramping.  *Id.* at 19-20.  He contends that because his HCV advanced to the advanced fibrosis stage, he is at a considerable risk for developing liver cancer in the future.  *Id.* at 20.  Plaintiff complains that he should continue to be monitored and screened, and he raises concerns for his future health and post-treatment care.  *Id.* at 20-21.  As relief, Plaintiff's complaint seeks $100,000.00 in damages from each of the Defendants sued in his or her individual capacity.  He further requests punitive damages, and other fees and costs as deemed appropriate.  *Id.* at 30.  Plaintiff did not request injunctive relief.

Service of the complaint was directed and on August 22, 2019, an Initial Scheduling Order was entered.  ECF No. 39.  Thereafter, Plaintiff filed a motion for preliminary injunction, ECF No. 45, requesting this Court

modify the injunction which was entered in the <u>Hoffer v. Inch</u> case, number 4:17cv214-MW, or in the alternative, enter a preliminary injunction in this case. ECF No. 45. Specifically, Plaintiff contends that the Department's policy regarding the care of HCV inmates fails to include a post-care provision. *Id.* at 2. Plaintiff claims that "there is no specific policy provision in any section of the current policy that directs specific tests, imaging or other bio-markers taken at any regular intervals . . . to confirm (SVR) results for [p]ost-care of those who were previously identified as priority level one for treatment." *Id.* He states that without an order to modify the policy, HCV inmates will not receive proper follow-up care. *Id.* at 3-4.

Defendants were directed to file a response to Plaintiff's motion. The Order noted that this case could not be used to modify an injunction entered in a separate case. ECF No. 50. Thus, Plaintiff's motion is construed only as a motion for a preliminary injunction in this case. *Id.*

Defendant Inch filed a response, ECF No. 68, Defendants Lafontant and Myers filed a separate response, ECF No. 66, as well as Defendants Cherry, Love, Perez-Lugo, and Toledo-Alverio, ECF No. 65. Plaintiff submitted a reply, ECF No. 69, to address the response filed by Defendants Cherry, Love, Perez-Lugo, and Toledo-Alverio. Plaintiff's reply

was not authorized, *see* N.D. Fla. Loc. R. 7.1(I), and has not been considered.

However, Plaintiff requested, ECF No. 77, and was granted leave to file a reply to the response filed by Defendant Inch.  ECF No. 79.  Plaintiff filed his reply, ECF No. 84, and Defendant Inch has filed a sur-reply, ECF No. 87.  The motion for preliminary injunction is ready for a ruling.

Additionally, two motions to dismiss are pending in this case.  ECF No. 53 and 95.  Plaintiff has already filed a response, ECF No. 67, to the first motion to dismiss filed by Defendant Inch, ECF No. 53.  Plaintiff has been granted an extension of time until February 26, 2020, in which to file his response to the second motion to dismiss, ECF No. 95.  For sake of judicial economy, it is anticipated that both motions to dismiss will be addressed at the same time.  Accordingly, this Report and Recommendation addresses only Plaintiff's motion for injunctive relief.

**Analysis**

Granting or denying a preliminary injunction is a decision within the discretion of the district court. <u>Carillon Importers, Ltd. v. Frank Pesce Intern. Group Ltd.</u>, 112 F.3d 1125, 1126 (11th Cir. 1997) (citing <u>United States v. Lambert</u>, 695 F.2d 536, 539 (11th Cir. 1983)).  Preliminary injunctive relief may be granted only if the moving party establishes:

    (1) a substantial likelihood of success on the merits;

    (2) a substantial threat of irreparable injury unless the injunction issues;

    (3) the threatened injury to the movant outweighs whatever harm the proposed injunction may cause the opposing party; and

    (4) granting the injunction would not be adverse to the public interest.

<u>Keeton v. Anderson–Wiley</u>, 664 F.3d 865, 868 (11th Cir. 2011); <u>Carillon Importers, Ltd.</u>, 112 F.3d at 1126; <u>United States v. Jefferson Cnty.</u>, 720 F.2d 1511, 1519 (11th Cir. 1983).  A preliminary injunction is an extraordinary and drastic remedy and should not be granted unless the movant "clearly carries the burden of persuasion" of all four prerequisites, which is always on the Plaintiff.  <u>Siegel v. LePore</u>, 234 F.3d 1163, 1176

(11th Cir. 2000); Jefferson Cnty., 720 F.2d at 1519 (citing Canal Auth. v. Callaway, 489 F.2d 567 (5th Cir. 1974)).

In considering whether Plaintiff faces a substantial likelihood of success on the merits, the Court notes that: (1) "chronic HCV is a serious medical need" and (2) in a prior case, the Secretary of the Florida Department of Corrections was found to have been deliberately indifferent to the serious medical needs of HCV prisoners.  Hoffer v. Inch, 382 F. Supp. 3d 1288, 1296 (N.D. Fla. 2019).  With that background, it can *generally* be concluded that Plaintiff's complaint faces a substantial likelihood of success on the merits of his Eighth Amendment claim, at least as it concerns some of the Defendants.

Nevertheless, it does not appear that Plaintiff has shown a substantial threat of irreparable injury unless the injunction issues.  Defendants[1] assert that Plaintiff's request for relief is moot and that the injunction is not "necessary."  ECF No. 65 at 2.  Defendant Inch has shown that in "May 2019, three months after Plaintiff filed the instant suit," the Department "released a revised Health Services Bulletin 15.03.09,

---

[1] Defendants Myers and Lafontant take no position on the motion because it does not impact them.  ECF No. 66 at 2.

Case No. 4:19cv97-MW/CAS

Supplement #3 (hereinafter 'HSB') for HCV management." ECF No. 68 at 3 (citing Ex. 1 (ECF No. 68-1). That Bulletin was issued to manage treatment for HCV and describes "departmental recommendations for the screening, evaluation, treatment, and monitoring of patients infected with hepatitis C virus (HCV)." ECF No. 68-1 at 1 (Ex. 1). Defendant Inch notes that it is "the most current directive to all health care professionals caring for FDC inmates who are or were previously infected with HCV." ECF No. 68 at 3. The Bulletin states that all deadlines included "are mandatory." *Id.* at 4; *see also* Ex. 1 at 1.

In particular, Defendant Inch points out that the Bulletin "specifically addresses the issues of post-treatment HCV monitoring, cirrhosis and liver transplants for HCV patients with Decompensated Cirrhosis." ECF No. 68 at 3-4. The Bulletin provides that a post-treatment assessment must be done no earlier than 12 weeks after completion of treatment." ECF No. 68-1 at 12 (Ex. 1 at 12, ¶ N). "[P]atients who sustain an SVC will remain in the Gastrointestinal Clinic (GC)" for monitoring. *Id.* Additionally, "[a]ll patients with cirrhosis shall have additional consultative co-management" as directed in the Bulletin. *Id.* at ¶ O. "Patients with decompensated cirrhosis shall be co-managed by a gastroenterologist or hepatologist." *Id.* The

Bulletin further states that patients with certain "triggering events will be referred to a Florida liver transplant center for evaluation in accordance with that center's criteria and procedures." *Id.* at ¶ P. Such referrals "must be initiated within 30 days of any one of the [listed] triggering events." ECF No. 68-1 at 13, ¶ P.

Plaintiff has acknowledged that the Department has a written policy that requires follow-up monitoring. ECF No. 84 at 2. His reply suggests, however, that the policy is "vague" and could "be applied in an arbitrary manner." *Id.* at 3. He expresses concern that the "Post Medical Care would be so cursory as to amount to no monitoring at all." *Id.* at 4. Plaintiff's reply indicates that he wants the policy modified to include "clear and concise language" that will direct providers as to the "how, what and when" of GC reviews. *Id.* at 6.

In response, Defendant argues that Plaintiff "will not be satisfied" with the written policy unless "it specifically orders those tests that he alone believes are necessary." ECF No. 87 at 2. Defendant points out that the law requires appropriate medical care for prisoners, but does not require prison officials to provide the specific regiment of treatment as may be desired by a prisoner. *Id.* at 3.

Case No. 4:19cv97-MW/CAS

Plaintiff's response is not read as suggesting that Plaintiff wants all post-HCV inmates to be treated the same as argued by Defendant Inch. Rather, Plaintiff wants to ensure that inmates are given appropriate follow-up medical care when treatment for HCV has been completed. Considering the Department's "long and sordid history of failing to treat HCV-infected inmates," Plaintiff's concern is understandable. *See* Hoffer, 382 F. Supp. 3d at 1294. Yet there is no indication on this record that appropriate follow-up care and monitoring will not be provided. "[A] party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." Wooden v. Bd. of Regents of Univ. Sys. of Georgia, 247 F.3d 1262, 1284 (11th Cir. 2001) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983)). Speculation is insufficient to establish that "a substantial threat of irreparable injury" exists. Lyons, 461 U.S. at 105, 103 S. Ct. at 1666-67.

Returning to Plaintiff's request for a preliminary injunction, he specifically claimed that the Department's HCV policy did not include a post-care provision. ECF No. 45 at 2. That has been shown to be

incorrect.  Further, Plaintiff claimed that no provision directed "specific tests, imaging or other bio-markers taken at any regular intervals . . . ." *Id.* Although "specific tests" are not directed, post-treatment testing and monitoring is required.  The type of tests or imaging required will depend on the circumstances specific to an inmate, as will the frequency of the tests.  Further, the type of testing performed will necessarily vary as medical science continually evolves.

The evidence reveals that the Bulletin does what Plaintiff requested - it provides a policy that directs testing and monitoring of post-care HCV inmates.  Thus, issuing a preliminary injunction is not necessary.  Indeed, Plaintiff's request for injunctive relief is moot.  Plaintiff does not face a "substantial threat of irreparable injury" if the injunction is not issued. Plaintiff is unable to demonstrate all four prerequisites for injunctive relief. Therefore, Plaintiff's motion, ECF No. 45, must be denied.

## RECOMMENDATION

I is respectfully **RECOMMENDED** that Plaintiff's motion for preliminary injunction, ECF No. 45, be **DENIED** and this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on January 31, 2020.

S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**